**STATE of Minnesota, Respondent,**

v.

**Houa V. LEE, Appellant.**

**No. C8–02–2278.**

Supreme Court of Minnesota.

July 22, 2004.

Rochelle R. Winn, Theodora K. Gaitas, Office of the State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Thomas R. Ragatz, Asst. Atty. Gen., Minnesota Attorney General's Office, St. Paul, MN, Kari A. Lindstrom, Washington County Attorney's Office, Stillwater, MN, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Justice.

Appellant Houa Vang Lee was convicted following a jury trial of receiving stolen property for the benefit of a gang, fifth-degree controlled substance crime and possession of a firearm with an altered serial number. On appeal, Lee asserts that the omission of the jury instruction regarding accomplice testimony was reversible error. The court of appeals affirmed Lee's convictions. Concluding that the omission of the jury instruction regarding accomplice testimony was error, but not prejudicial error requiring a new trial, we affirm.

On December 31, 2001, law enforcement officers responded to gang-related drive-by shootings in St. Paul and Brooklyn Center, Minnesota. At approximately the same time, appellant Lee was hosting a party at his townhome in Woodbury, Minnesota. Lee allowed his cousin Mai Yang, acquaintance James Her and two of their friends from Milwaukee, all members of the Imperial Gangsters gang, to stay the night. Yang, Her and the others awoke early the next morning, returned to the Milwaukee area and were subsequently arrested for unrelated offenses. While in custody, Her told the police that he had

information about the drive-by shootings that took place in the Twin Cities on New Year's Eve. This information was relayed to law enforcement in St. Paul.

On January 8, 2002, Special Investigator Mark Reding from the St. Paul Police Department and Investigator John Hankes from the Minnesota Gang Strike Force interviewed Her in Port Washington, Wisconsin where Her was being held in connection with a burglary in that jurisdiction. Her told the investigators that he and other members of the Imperial Gangsters had stolen firearms in the Wisconsin area, that they transported the firearms to the Twin Cities, that some of the firearms were used in drive-by shootings in the Twin Cities and that the firearms were located in Lee's garage. Her told the investigators that Lee's role was that of the "shot caller."

On January 9, 2002, at around 7 p.m., law enforcement officers executed a search warrant at Lee's home and found several firearms, ammunition and a baggie of marijuana in the garage. Through contacts with investigators in Wisconsin and a computer records check, law enforcement determined that two of the firearms, a Remington bolt-action rifle and a Ruger 9–mm handgun, had been stolen in a residential burglary near Sullivan, Wisconsin on December 7, 2001. The handgun was found in a day planner with mail addressed to Mai Yang. A third firearm, a bolt-action long rifle, had the serial number scratched off.

Lee was charged by complaint with receiving stolen property, Minn.Stat. § 609.53, subd. 1 (2002); receiving stolen property for the benefit of a gang, Minn. Stat. §§ 609.53, subd. 1, 609.229, subd. 2 (2002); fifth-degree controlled substance crime, Minn.Stat. § 152.025, subd. 2(1) (2002); and possession of a firearm with altered identification, Minn.Stat.

§ 609.667(2) (2002). The state obtained an order requiring Her to testify by granting him use immunity. At the time of Lee's trial, burglary charges against Her were pending in Wisconsin.

At Lee's trial, Her testified that he was a member of the Imperial Gangsters, a gang whose members were located in Minnesota, Wisconsin, and North Carolina. Her stated the Imperial Gangsters had "a lot" of members, meaning more than ten. He indicated that the gang had signs and symbols. Her also admitted to having been convicted for aggravated battery and armed robbery, gang-related crimes. He testified that the Imperial Gangsters had "a lot" of rivalries, including the Purple Brothers.

Her testified that he and three others had committed the December 7, 2001 burglary to obtain firearms for the gang. He admitted committing burglaries in about ten other counties as well. According to Her, he and other gang members started committing burglaries in November 2001 because Lee wanted "firearms for the family or for the nation." They were so successful that when Lee heard about it, he told them to bring the firearms to the Twin Cities because there were more problems with gang action in Minnesota than in Milwaukee. Consequently, Her, Mai Yang and other gang members brought the stolen firearms with them as they traveled to the Twin Cities to celebrate the coming New Year. Some of the stolen firearms were stored in Lee's garage.

Her testified that they spent the first night in a motel and then stayed at Lee's house over the rest of the weekend. On December 31, 2001, Her and other gang members went to the Metrodome for a New Year's celebration where a fight

erupted with a rival gang.[1] When they returned to Lee's house, there was a party in progress. According to Her, people were drinking and using marijuana but Lee was using "[j]ust alcohol." Her testified that during the evening, the Imperial Gangsters committed two drive-by shootings in retaliation for the fight that occurred at the Metrodome. During the first drive-by shooting, Her drove his vehicle. Her did not participate in the second drive-by shooting. According to Her, Lee did not participate in either incident; but Lee was in the garage when they were reloading. Lee also "kind of" told them to "take care" of the second house and asked Her to let another gang member use Her's car for the second drive-by shooting. Early the following morning, Her and the other gang members left Lee's residence and traveled to the Milwaukee area where they were arrested for unrelated offenses.

In addition to Her's testimony, the state offered the testimony of one of the investigating officers who described the execution of the search warrant at Lee's residence and the means by which they connected some of the firearms found in Lee's garage to the December 7, 2001 burglary near Sullivan, Wisconsin. The victim of the Wisconsin burglary also testified and identified two of the firearms found in Lee's garage as having been stolen from his residence. The state also called an expert on criminal street gangs who testified about gangs in general and the Imperial Gangsters in particular. This expert identified Lee as an active member of the Imperial Gangsters.

Lee testified that at the time he was arrested, he was living with his wife and three small children in their Woodbury townhome. He was a full-time student and had two part-time jobs. Lee admitted that he had been a member of the Imperial Gangsters, but explained that when he was convicted of intimidation in the mid–1990's, he decided to quit the gang. Lee acknowledged that he continued to socialize with gang members, but explained that he did so because they were relatives. Lee testified that Her had asked Lee to rejoin the gang but that Lee declined, having turned his life around.

Lee denied knowledge of the presence of stolen firearms in his garage. He claimed that he allowed his cousin, Mai Yang, to store some of his belongings in Lee's garage because they were "so closely related." Lee also claimed that Yang knew that Lee "was married and [had] three children," and Lee did not think Yang would put Lee's life "in jeopardy like that." He further testified that when Yang brought his belongings to Lee's house, "it wasn't visible" to Lee that there were guns because he saw only clothes, blankets, a towel, a pillow, a backpack and books. He claimed he did not "see any physical features such as guns."

Lee testified that he allowed Yang, Her and their friends to stay at his townhome because they apparently had no money for a motel and Lee's wife was spending the New Year's Eve weekend elsewhere. Lee had a New Year's Eve party with some friends from school. Lee allowed Yang, Her and their friends to attend the party, but because they "were presented as a gang," Lee's guests "were intimidated." Not wanting them to scare his other guests, Lee instructed the gang members to stay in the kitchen. Lee claimed that he had to stop arguments between Yang and Her several times throughout the night and that he could smell marijuana on them. According to Lee, around 7:30 p.m. Her and some of his friends "disappeared," presumably exiting through the garage,

1. Her thought December 31, 2001 was a Sunday. December 31, 2001, was a Monday.

and returned around 10 p.m. Shortly after that, Lee gave Yang $40 for beer and asked Her to let Yang use Her's car because Lee's car was blocked in the garage by his guests' cars. Yang then left in Her's car while Her stayed behind. Yang returned with more beer around 11:30 p.m. Lee testified that he asked Yang where the beer came from because it was Sunday, and Yang said he "crossed over to Wisconsin." After "counting down" to the New Year, Lee's school friends left. Because Yang, Her and their friends were drunk, Lee let them spend the night, telling them to leave as soon as possible because he had promised his wife that he would not have gang contact. They were gone by the time Lee awoke the following morning.

The jury found Lee guilty as charged. The district court sentenced Lee to an executed 27–month prison term for receiving stolen property for the benefit of a gang and concurrent terms of 13 months for the controlled substance crime and one year and one day for the firearm offense. Lee appealed, asserting *inter alia,* reversible error in the omission of a jury instruction regarding accomplice testimony. The court of appeals affirmed, concluding that Her was not an accomplice, and we granted further review.

## I.

▇▇▇ A defendant may not be convicted based solely on the uncorroborated testimony of an accomplice. Minn.Stat. § 634.04 (2002);[2] *see also State v. Ford,* 539 N.W.2d 214, 225 (Minn.1995) (stating that "a criminal conviction may not be based upon the testimony of an accomplice unless it is corroborated by other evidence

that tends to convict the defendant of the offense."). The general test for determining "whether a witness is an accomplice for purposes of section 634.04 is whether he could have been indicted and convicted for the crime with which the accused is charged." *State v. Henderson,* 620 N.W.2d 688, 701 (Minn.2001) (citing *State v. Swyningan,* 304 Minn. 552, 555, 229 N.W.2d 29, 32 (1975)). If the facts of the case are undisputed and there is only one inference to be drawn as to whether the witness is an accomplice, the court should make the determination; but "if the evidence is disputed or susceptible to different interpretations, then the question whether the witness is an accomplice is one of fact for the jury." *State v. Flournoy,* 535 N.W.2d 354, 359 (Minn.1995).

In early law, the receiver of stolen property was "regarded as a party to the underlying larceny as an accessory after the fact." 3 Charles E. Torcia, *Wharton's Criminal Law* § 439 (15th ed.1995). Accordingly, the traditional rule was that a thief was not an accomplice of the receiver of the stolen property. *See State v. Rosenberg,* 155 Minn. 37, 41, 192 N.W. 194, 195 (1923) (thieves were not accomplices with the party who feloniously received the goods); *State v. Gordon,* 105 Minn. 217, 219, 117 N.W. 483, 484 (1908) (same). And a person who feloniously received stolen goods was not an accomplice to the thief unless such individual was independently an accessory before the fact. *See State v. Jensen,* 289 Minn. 444, 448, 184 N.W.2d 813, 816 (1971) (holding that accomplice jury instruction reasonably informed jury of the critical distinction between being actors in a burglary and accessories after the fact); *see also Trovato v. State,* 36

---

2. Minnesota Statutes § 634.04 provides that:
   A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends

to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Md.App. 183, 373 A.2d 78, 80 (1977) (receiver of stolen goods is not an accomplice of the thief unless the receiver is independently an accessory before the fact). Minnesota Statutes § 609.05 (2002) makes accessories before the fact liable as principals.[3] *State v. Grilli*, 304 Minn. 80, 84, 230 N.W.2d 445, 449–50 (1975) ("If a person's conduct qualifies under [Minn.Stat. § 609.05], he is accused as a principal to the crime even though in common-law parlance, his conduct is that of an accessory.").

■ Over the years, the words used by the Minnesota legislature to describe the conduct proscribed in the theft and receiving stolen property statutes evolved, overlapping sufficiently so that in a prosecution for receiving stolen property, it is no defense that the defendant was the thief. *State v. Lawrence*, 312 N.W.2d 251, 252 (Minn.1981).[4] The state has the discretion to charge a person with the offense which is best supported by the available evidence and which carries a penalty commensurate with the culpable acts involved. *State v. Jones*, 289 Minn. 22, 23–24, 183 N.W.2d 282, 283 (1970). But a person may not be convicted of both theft and receiving stolen property with respect to property involved in the same transaction. *Lawrence*, 312 N.W.2d at 252; *see also* Minn. Stat. § 609.04, subd. 1 (2002).

■ Here, under the state's theory of the case and the evidence presented, at Lee's direction, Her transferred stolen firearms from Milwaukee to the garage of Lee's townhome for the benefit of a gang, activity that falls within the conduct prohibited as receiving stolen property. Both Lee and Her could have been charged and convicted of receiving stolen property in violation of Minn.Stat. §§ 609.53 and 609.05. *See Jones*, 289 Minn. at 23, 183

3.  Minnesota Statutes § 609.05 provides:

    Subdivision 1.  A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

    Subd. 2.  A person liable under subdivision 1 is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by the person as a probable consequence of committing or attempting to commit the crime intended.

    Subd. 3.  A person who intentionally aids, advises, hires, counsels, or conspires with or otherwise procures another to commit a crime and thereafter abandons that purpose and makes a reasonable effort to prevent the commission of the crime prior to its commission is not liable if the crime is thereafter committed.

    Subd. 4.  A person liable under this section may be charged with and convicted of the crime although the person who directly committed it has not been convicted, or has been convicted of some other degree of the crime or of some other crime based on the same act, or if the person is a juvenile who has not been found delinquent for the act.

    Subd. 5.  For purposes of this section, a crime also includes an act committed by a juvenile that would be a crime if committed by an adult.

4.  The theft statute, Minn.Stat. § 609.52, subd. 2 (2002), provides in relevant part:

    Whoever does any of the following commits theft and may be sentenced as provided in subdivision 3:

    (1) intentionally and without claim of right takes, uses, transfers, conceals or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property.

    The receiving stolen property statute, Minn. Stat. § 609.53, subd. 1 (2002), provides in relevant part:

    Except as otherwise provided in section 609.526, any person who receives, possesses, transfers, buys or conceals any stolen property or property obtained by robbery, knowing or having reason to know the property was stolen or obtained by robbery, may be sentenced in accordance with the provisions of section 609.52, subdivision 3.

N.W.2d at 283; *see also State v. Bishir*, 291 Minn. 459, 460, 192 N.W.2d 815, 816 (1971).[5] Because Her and Lee could have been charged and convicted with the same crime, Her was an accomplice to Lee.

## II.

■ An accomplice instruction "must be given in any criminal case in which any witness against the defendant might reasonably be considered an accomplice to the crime." *State v. Shoop*, 441 N.W.2d 475, 479 (1989).[6] The basis for this rule is that the credibility of an accomplice is inherently untrustworthy. *State v. LaJambe*, 300 Minn. 539, 541, 219 N.W.2d 917, 919 (1974). The duty to instruct on accomplice testimony remains regardless of whether counsel for the defendant requests the instruction. *State v. Strommen*, 648 N.W.2d 681, 689 (Minn.2002). Accordingly, because Her was an accomplice, the omission of the jury instruction regarding accomplice testimony was error. *Id.*

■ We evaluate the erroneous omission of a jury instruction under a harmless error analysis. *Shoop*, 441 N.W.2d at 480. If the erroneous omission of the instruction "might have prompted the jury, which is presumed to be reasonable, to reach a harsher verdict than it might have otherwise reached, defendant must be awarded a new trial." *Id.* at 481. If, however, beyond a reasonable doubt "the omission did not have a significant impact on the verdict, reversal is not warranted." *Id.*

■ Here, the testimony of Her was compelled under a grant of use immunity and not done pursuant to a promise of leniency. His testimony was straightforward, consistent and corroborated by other evidence. The state also introduced evidence that drive-by shootings took place on New Year's Eve; that firearms found in Lee's townhome garage had been stolen from a Wisconsin residence and that the serial numbers on one of the firearms in Lee's garage had been altered. Lee testified that Her and his friends "presented as a gang"; that Her's car was used by the gang twice that night; that he asked Her for Her's car keys for the second excursion and that Her stayed behind. Lee testified that he was aware of marijuana use during his party; and he testified that his car was "blocked from getting out of the garage," and that he gave his cousin permission to store belongings in the garage and allowed gang members into his garage when his wife was not home, thereby exercising dominion and control over the area in which the firearms and marijuana were found.[7]

---

5. Contrary to the state's assertion, Minn.Stat. § 609.05 does not create a separate and distinct crime. *See State v. Britt*, 279 Minn. 260, 264, 156 N.W.2d 261, 264 (1968) (stating "there is no such crime as 'criminal liability for a crime committed by another' ").

6. The pattern accomplice testimony instruction provided in the Criminal Jury Instruction Guide 3.18, provides in part:

   You cannot find the defendant guilty of a crime on the testimony of a person who could be charged with that crime, unless that testimony is corroborated by other evidence that tends to convict the defendant of the crime. Such a person who could be charged for the same crime is called an accomplice.
   * * *
   (If you find that (any person who has testified in this case) is a person who could be charged with the same crime as the defendant, you cannot find the defendant guilty of a crime on that testimony unless that testimony is corroborated.)
   10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 3.18 (4th ed.1999).

7. A person may constructively possess contraband jointly with another person. *See Commissioner of Revenue v. Fort*, 479 N.W.2d 43, 46 (Minn.1992). To prove constructive pos-

In closing argument, the state focused on the evidence corroborating Her's testimony, including that of Lee, as well as evidence independently connecting Lee to the offenses. Also, the district court's general instructions on witness credibility alerted the jury to the potential for conflicting motivations behind certain testimony. Although the omission of the instruction on accomplice testimony was error, our independent review of the record compels the conclusion that beyond a reasonable doubt the omission did not have a significant impact on the verdict.[8]

Affirmed.

session, the state must prove that: (1) the police found the item in a place under the defendant's exclusive control to which other people did not normally have access, or (2) if the police found it in a place to which others had access, that there is a strong probability, inferable from the evidence, that the defendant was, at the time, consciously exercising dominion and control over it. *State v. Flo-*

*rine,* 303 Minn. 103, 105, 226 N.W.2d 609, 611 (1975).

8. Our decision that the omission of an instruction on accomplice corroboration was harmless error "similarly reflects our rejection of defendant's contention that the evidence corroborating [Her's] testimony was insufficient." *See Shoop,* 441 N.W.2d at 482.