**STATE of Minnesota, Respondent,**

v.

**Pedro Maldono RODRIGUEZ, Jr., Appellant.**

**No. A06–974.**

Court of Appeals of Minnesota.

Sept. 11, 2007.

Lori Swanson, Attorney General, St. Paul, MN; and Gregory A. Widseth, Polk County Attorney, Scott A. Buhler, Assistant County Attorney, Crookston, MN, for respondent.

John M. Stuart, State Public Defender, Paul J. Maravigli, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge; KALITOWSKI, Judge; and MUEHLBERG, Judge.

## OPINION

MUEHLBERG, Judge.*

Appellant challenges the district court's order sentencing him to a total of 338 months in prison, arguing that (1) the admission of hearsay evidence during a sentencing-jury proceeding violated his federal and state constitutional rights to confront witnesses against him; (2) the district court erred by failing to give an accomplice instruction to the jury; and (3) the district court erred by imposing consecutive sentences. Because we conclude that a criminal defendant does not have a federal or state constitutional right to confront witnesses against him in sentencing-jury proceedings, any potential error in failing to give an accomplice instruction to the jury was harmless error,

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

and the district court did not err by imposing consecutive sentences, we affirm.

## FACTS

In March 2004, Crookston police learned that appellant Pedro Maldono Rodriguez, Jr. and another individual, Glen Eric McGee, had returned from Texas with a substantial amount of cocaine. A Crookston police officer spotted appellant's Ford Explorer and saw McGee get out of appellant's truck with a bag and enter his residence. The officer stopped appellant, and a police drug-detection dog sniffed the car. The dog alerted to the presence of a controlled substance in and around appellant's car. Appellant was subsequently arrested.

After drugs were detected in appellant's car, the officer informed Deputy Randy Sondrol of the Polk County Sheriff's Office. Sondrol and another deputy sheriff went to McGee's residence to speak to him. McGee admitted that he had been in Texas during the past few days with appellant and another person, although he was on probation and did not have permission to leave the state. Sondrol informed McGee that he had information that McGee and appellant had just returned from Texas with a large amount of cocaine and asked McGee if he was involved. McGee responded, "Okay, come here," and led the officers to a bag filled with 60 individually-wrapped baggies of white powder, later analyzed by the BCA to contain cocaine. McGee also gave the police a semi-automatic pistol and ammunition.

After being advised of and waiving his rights, McGee stated that he and appellant had traveled to Big Wells, Texas, in March 2004, along with appellant's step-daughter, A.W., who was a minor at the time, in order to purchase drugs to sell in Minnesota. Once they arrived in Big Wells, McGee gave appellant $12,000, and appellant and A.W. went to purchase the drugs.

Eight hours later, appellant returned with a Hershey's syrup container containing cocaine. McGee stated that he and appellant had made the trip on two other occasions. McGee was arrested and taken to the Crookston jail.

After arresting McGee, Sondrol interviewed appellant. After being advised of and waiving his rights, appellant repeated the story told by McGee about traveling to Texas to buy drugs. He said that he had shot the pistol found in McGee's possession in Texas, and he brought it back to Minnesota to sell to McGee or trade to him for drugs. He also admitted giving cocaine to minors during parties in the past.

Deputy Sondrol received consent to search appellant's home and recovered drug paraphernalia and rifle ammunition. When Sondrol interviewed McGee again, McGee stated that the first time he and appellant went to Texas was in January 2003, and the second time was in September 2003. McGee informed Deputy Sondrol that on the second trip, appellant bought four to five ounces of cocaine and a handgun; the cocaine was brought back to Crookston and given to another person to sell.

Appellant pleaded guilty to four counts of controlled-substance crime, one count of failing to affix a tax stamp, and one count of felon in possession of a firearm, arising out of activity that occurred between January 2003 and March 2004. Count I, the relevant crime here, was conspiracy to commit controlled-substance crime in violation of Minn.Stat. §§ 152.096, subd. 1; 152.021, subds. 1(1), 2(1), and 3(b); 152.0261, subds. 1, 3; and 609.11, subd. 5a. The district court sentenced appellant to 278 months for conspiracy to commit controlled-substance crime, an upward durational departure; as well as 158 months for possession of a controlled substance with intent to sell, to be served concurrently;

and 60 months for felon in possession of a firearm, to be served consecutively. Appellant challenged the sentences imposed by the district court.

In July 2005, this court concluded that because the district court imposed a sentence for conspiracy to commit controlled-substance crime that was an upward durational departure from the presumptive sentence based solely on judicially found facts, it violated appellant's Sixth Amendment rights. *See State v. Rodriguez,* 2005 WL 1669493 (Minn.App. July 19, 2005), *review denied* (Minn. Sept. 28, 2005). This court reversed and remanded for resentencing in accordance with *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

On remand, in February 2006, the district court convened a sentencing-jury proceeding on the aggravating facts required for an upward durational departure. Prior to the jury's empanelment, appellant made a number of motions. Appellant moved in limine to exclude (1) his taped admission that he provided cocaine to juveniles; (2) BCA lab results of cocaine without the testimony of the lab chemist; and (3) evidence of any cocaine beyond the statutorily required amount for charging. The district court denied these motions. Appellant also moved to exclude his guilty-plea transcript and to allow him to stipulate to the felon in possession of a firearm conviction, which were also denied.

The state moved for an order denying the applicability of the rules of evidence and the right of confrontation to the sentencing-jury proceeding, which was granted. The district court instructed the jury that "[appellant] is presumed innocent with respect to the issues that you are being asked to decide, even though the defendant already has pled guilty to committing the charged crimes."

At the sentencing trial, the state presented its entire case through the testimony of Deputy Sondrol. The state put into evidence a number of photographs, BCA reports on the examination of physical evidence, two tape-recorded statements by McGee, and appellant's tape-recorded statement. The jury was also informed of the six charges to which appellant pleaded guilty. Appellant objected to the admission of McGee's taped statements on the grounds of foundation, confrontation, hearsay, and relevance, but was overruled. Appellant also objected to the admission of his own taped statement, but was overruled.

Prior to final jury instructions, appellant requested an accomplice instruction, but it was denied. The district court granted appellant's request for a "right not to testify" instruction. The jury found that the following factors were proved beyond a reasonable doubt: (1) Count I (conspiracy) was a major controlled-substance offense, based on findings that (a) the offense involved at least three separate transactions wherein controlled substances were sold, transferred, or possessed with intent to sell, (b) the offense involved an attempted or actual sale or transfer of controlled substances substantially larger than for personal use, (c) appellant knowingly possessed a firearm during commission of the offense, and (d) the offense involved a high degree of sophistication or planning over a lengthy period of time or involved a broad geographic area of disbursement; (2) appellant sold cocaine to juveniles during the course of Count I; (3) Count I was committed as part of a group of three or more persons who all actively participated in the crime; and (4) a juvenile was present during the commission of Count I, and appellant was a parent, legal guardian, or caretaker of the juvenile. The district court reimposed the sentences that it had originally ordered. This appeal follows.

## ISSUES

I. Did the district court err by admitting hearsay evidence during a sentencing-jury proceeding in violation of appellant's federal and state constitutional rights to confront witnesses against him?

II. Did the district court abuse its discretion by admitting hearsay evidence during a sentencing-jury proceeding in violation of the rules of evidence?

III. Did the district court err by failing to give an accomplice instruction to the sentencing jury?

IV. Did the district court err by imposing consecutive sentences in violation of *Blakely v. Washington?*

## ANALYSIS

### I.

Appellant argues the district court erred by allowing the admission of hearsay evidence during a sentencing-jury proceeding in violation of the Confrontation Clause of the Sixth Amendment.[1] Respondent argues that even if there was a violation of appellant's Sixth Amendment rights, any error was harmless. Normally, this court will not address issues of constitutional law unless necessary to decide a case. *State v. Otterstad,* 734 N.W.2d 642, 647 (Minn. 2007); *State v. Hoyt,* 304 N.W.2d 884, 888 (Minn.1981). Therefore, we first consider whether any potential error was "harmless."[2]

Appellant contends the state's use of McGee's recorded statements and the BCA report[3] led to the upward durational departure and, therefore, their admission was not harmless error. Confrontation Clause violations under *Crawford* are subject to a constitutional harmless-error analysis. *State v. Caulfield,* 722 N.W.2d 304, 314 (Minn.2006). Harmless-error analysis determines whether the error reasonably could have impacted the jury's decision. *Id.* This inquiry focuses on "the manner in which the evidence was presented, whether it was highly persuasive, whether it was used in closing argument, and whether it was effectively countered by the defendant." *Id.* The inquiry should lead to a determination of whether the error was "surely unattributable" to the jury's verdict. *State v. Juarez,* 572 N.W.2d 286, 292 (Minn.1997).

Under Minn. Sent. Guidelines II. D.2.b.(5), the presence of two or more of the following factors are aggravating factors that can lead to a finding that a controlled-substance offense was a "major" controlled-substance offense:

(a) the offense involved at least three separate transactions wherein controlled substances were sold, transferred, or possessed with intent to do so; or

(b) the offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use; or

1. We observe that any out-of-court statements of appellant are not hearsay, but rather party admissions exempt from hearsay rules by Minn. R. Evid. 801(d)(2)(A).

2. While harmless-error analysis first requires an inquiry into the extent of the error, respondent concedes that if the Confrontation Clause applies at sentencing, the district court erred by admitting McGee's statements and the BCA report. Therefore, the extent of the error is clear, and we may proceed to deter-

mining whether the verdict was "surely unattributable" to the error. *See State v. Shoen,* 578 N.W.2d 708, 715–16 (Minn.1998) (stating harmless-error analysis inherently requires consideration of the nature and extent of error before considering whether conviction was "surely unattributable" to error).

3. *State v. Caulfield,* 722 N.W.2d 304 (Minn. 2006), held that BCA lab reports were "testimonial" under *Crawford* for Sixth Amendment purposes.

(c) the offense involved the manufacture of controlled substances for use by other parties; or

(d) the offender knowingly possessed a firearm during the commission of the offense; or

(e) the circumstances of the offense reveal the offender to have occupied a high position in the drug distribution hierarchy; or

(f) the offense involved a high degree of sophistication or planning or occurred over a lengthy period of time or involved a broad geographic area of disbursement; or

(g) the offender used his or her position or status to facilitate the commission of the offense, including positions of trust, confidence or fiduciary relationships (e.g., pharmacist, physician or other medical professional).

Here, the jury found that factors (a), (b), (d), and (f) were present in appellant's conspiracy. Only two of those factors are needed to be shown beyond a reasonable doubt under the guidelines, and by appellant's own admission, factors (b), (d), and (f) are satisfied. Therefore, any error as a result of the admission of McGee's taped statements was harmless error.

More specifically, the aggravating factors were established by appellant's guilty pleas and his tape-recorded statement. In his guilty plea, appellant admitted traveling to Texas with McGee and appellant's 17–year–old stepdaughter; while in Texas he admitted obtaining a semi-automatic pistol and what he thought was a pound of cocaine. He transferred the pistol and cocaine to McGee, and they agreed it would be sold in Minnesota. He admitted making one other trip to Texas with

McGee and that the conspiracy spanned the period between January 2003 and March 2004.

Similarly, during appellant's tape-recorded statement, he admitted going to Texas for one week with McGee and appellant's 17–year–old stepdaughter; he admitted obtaining and shooting a firearm; he admitted they went to Texas to procure a pound of cocaine worth $12,000; he said McGee obtained the cash and was supposed to sell the cocaine and firearm; and appellant had made one prior trip to Texas with McGee approximately six months prior to the March 2004 trip to pick up an unspecified quantity of drugs. Appellant's statements provide sufficient evidence to find the necessary aggravating factors for an upward sentencing departure under the guidelines.

We observe that the issue of whether a defendant has the right to confront witnesses against him in sentencing trials under *Blakely* is an issue of first impression in Minnesota. While we normally avoid addressing constitutional issues when unnecessary to dispose of a case, the likelihood that district courts will be confronted with this issue in the future requires this court to provide guidance on the matter.[4] Therefore, we turn to an analysis of whether the admission of hearsay evidence during sentencing-jury proceedings under Minn.Stat. § 244.10, subd. 5 (2006), violates the confrontation clauses of the federal and state constitutions.

We review questions pertaining to the interpretation of the state and federal constitutions de novo. *State v. Shattuck*, 704 N.W.2d 131, 135 (Minn.2005). The federal and state constitutions guarantee a crimi-

---

4. We observe that Minn. R. Evid. 1101(b)(3), which states that the rules of evidence do not apply at sentencing proceedings, has not been modified since *Blakely* and *Crawford*. That seemingly plain statement of the law compels us to address the constitutional ramifications of admitting hearsay evidence during sentencing-jury proceedings.

nal defendant the right to a trial by jury. U.S. Const. amend. VI; Minn. Const. art. I, § 6. The analysis is the same under both provisions. *State v. Henderson,* 620 N.W.2d 688, 695 (Minn.2001). In *Apprendi v. New Jersey,* the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury...." 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). Applying *Apprendi, Blakely v. Washington* held that an upward durational departure from the statutory-maximum sentence based on a judge's findings, rather than those of a jury, is invalid under the Sixth Amendment right to trial by jury. 542 U.S. 296, 303–04, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004).

In *Shattuck,* the Minnesota Supreme Court applied *Blakely* and concluded that for felonies other than first-degree murder, the presumptive sentence set forth in the Minnesota Sentencing Guidelines is the maximum sentence a judge may impose without further jury findings. 704 N.W.2d at 141. Thus, an upward durational departure under the repeat-sex-offender statute, based on judicial findings of aggravating factors, was held to violate the defendant's right to a trial by jury. *Id.*

The legislature enacted procedures to be applied when the state seeks an upward departure from the sentencing guidelines based on aggravating facts. *See* Minn.Stat. § 244.10, subds. 4–7 (Supp.2005). In such a proceeding, the state must prove beyond a reasonable doubt to a jury of 12 members the factors in support of the state's request for an upward departure. *Id.* at subd. 5. The statute allows a unitary trial and final argument to a jury regarding both evidence in support of the elements of the offense and evidence in support of aggravating factors when the evidence in support of the aggravating factors (1) would be admissible as part of the trial on the elements of the offense; or (2) would not result in unfair prejudice to the defendant. *Id.* at subd. 5(b). But the district court shall bifurcate the proceedings, or impanel a resentencing jury, to allow for the production of evidence, argument, and deliberations on the existence of factors in support of an aggravated departure after the return of a guilty verdict when the evidence in support of an aggravated departure: (1) includes evidence that is otherwise inadmissible at a trial on the elements of the offense and (2) would result in unfair prejudice to the defendant. *Id.* at subd. 5(c).

Appellant argues that this court should interpret the United States Supreme Court's holding in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), to extend to sentencing-jury procedures under Minn.Stat. § 244.10, subd. 5.[5] The Confrontation Clause of the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. In *Crawford,* the United States Supreme Court reviewed the admissibility of hearsay statements in criminal trials. 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. The trial court admitted hearsay evidence derived from the custodial interrogation of the defendant's wife, who was a witness to a stabbing but was unavailable to testify because

---

**5.** Dissenting in *Blakely,* Justice Breyer suggested that under the *Blakely* majority's interpretation of the Sixth Amendment, district courts' use of pre-sentencing reports containing testimonial hearsay might violate the Confrontation Clause under *Crawford. Blakely,* 542 U.S. at 346, 124 S.Ct. at 2561 (Breyer, J., dissenting).

of marital privilege. *Id.* at 38, 124 S.Ct. at 1356–57. The trial court admitted the wife's tape-recorded statements as an exception to the hearsay rule. *Id.* at 40, 124 S.Ct. at 1358. The Supreme Court reversed, holding that interrogations by law-enforcement officers fall squarely within the category of testimonial hearsay. *Id.* at 68, 124 S.Ct. at 1374. Accordingly, the Sixth Amendment Confrontation Clause analysis turns on whether a particular statement is "testimonial" in nature. The *Crawford* Court held that testimonial out-of-court statements of witnesses may only be admitted where the declarant is unavailable and the defendant has had a prior opportunity to cross-examine. *Id.*

Thus far, every federal circuit court of appeals that has addressed the issue has ruled that *Crawford* does not apply to sentencing proceedings, even after *Blakely*. *See, e.g., United States v. Beydoun,* 469 F.3d 102, 108 (5th Cir.2006); *United States v. Katzopoulos,* 437 F.3d 569, 574–76 (6th Cir.2006); *United States v. Bustamante,* 454 F.3d 1200, 1202–03 (10th Cir. 2006); *United States v. Cantellano,* 430 F.3d 1142, 1146 (11th Cir.2005), *cert. denied,* 547 U.S. 1034, 126 S.Ct. 1604, 164 L.Ed.2d 325 (2006); *see also* Benjamin C. McMurray, "Challenging Untested Facts at Sentencing: The Applicability of *Crawford* at Sentencing After *Booker*," 37 *McGeorge L.Rev.* 589, 590–91 (2006) (noting that the federal circuit courts have rejected the possibility that the Confrontation Clause applies at sentencing). Additionally, a few state courts have ruled that the constitutional right of confrontation does not apply in noncapital sentencing proceedings. *See, e.g., Commonwealth v.*

*Nunez,* 446 Mass. 54, 841 N.E.2d 1250, 1254 (2006); *People v. Lassek,* 122 P.3d 1029, 1031–32 (Colo.Ct.App.2005).

In general, the federal circuits have followed prior Supreme Court precedent that the right to confrontation is a "trial right," that is, during the guilt or innocence phase of prosecution and that the admission of hearsay evidence at sentencing does not violate the Due Process Clause. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 52, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987) (trial right); *Williams v. People of State of New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 1082–83, 93 L.Ed. 1337 (1949) (admission of hearsay). The Ninth Circuit has concluded that because *Crawford* does not address sentencing proceedings, and *Williams* has not been expressly overruled, the law on hearsay at sentencing is still what it was before *Crawford*: "hearsay is admissible at sentencing, so long as it is 'accompanied by some minimal indicia of reliability.' " *United States v. Littlesun,* 444 F.3d 1196, 1200 (2006) (citations omitted); *see also Roper v. Simmons,* 543 U.S. 551, 594, 125 S.Ct. 1183, 1209, 161 L.Ed.2d 1 (2005) (stating that "it remains this Court's prerogative alone to overrule one of its precedents.... That is so even where subsequent decisions or factual developments may appear to have significantly undermined the rationale for [an] earlier holding"); *United States v. Duncan,* 413 F.3d 680, 683–84 (7th Cir.2005) (stating that it is not the role of an intermediate appellate court to overrule a decision of the Supreme Court or to anticipate such an overruling by the Court).[6]

---

**6.** Following *Crawford* and *Blakely,* the Supreme Court decided *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In *Booker,* the Court decided that the remedy for impermissible sentencing-guideline procedures was to make the guidelines advisory. Because advisory sentencing guidelines do not implicate the jury trial right, the Confrontation Clause cannot apply. But a different rule may apply for a jurisdiction, such as Minnesota, that has legislatively-imposed sentencing guidelines.

■ While the federal circuit courts' interpretation and application of *Crawford* does not bind this court, this court gives those decisions "great weight" in reaching its decision. *Minn. Twins P'ship v. State,* 592 N.W.2d 847, 854 (Minn.1999), *cert denied,* 528 U.S. 1013, 120 S.Ct. 517, 145 L.Ed.2d 400 (1999). Further, our supreme court has stated that "the [U.S.] Supreme Court should retain the exclusive privilege of overruling its own decisions." *State v. McFee,* 721 N.W.2d 607, 609 n. 4 (Minn. 2006). Therefore, because the Supreme Court has not overruled *Williams v. New York or Pennsylvania v. Ritchie,* it is not appropriate for this court to hold that defendants have a constitutional right under *Crawford* to confront witnesses during sentencing proceedings.

Appellant points out that the right to confront witnesses has been applied in the sentencing phase of a death-penalty case in various state courts. And as the Supreme Court has noted, "[b]ecause the death penalty is unique 'in both its severity and finality,' we have recognized an acute need for reliability in capital sentencing proceedings." *Monge v. California,* 524 U.S. 721, 732, 118 S.Ct. 2246, 2252, 141 L.Ed.2d 615 (1998) (citations omitted). But even the federal death-penalty act, 18 U.S.C. § 3593(c), permits evidence of aggravating factors in a death-penalty case regardless of whether that evidence would be admissible under the federal rules of evidence. While appellant notes that the Supreme Court has not forbidden application of the Confrontation Clause to sentencing proceedings, the "great weight" of federal precedent points away from the conclusion that the Confrontation Clause, as interpreted by *Crawford,* applies in post-*Blakely* sentencing hearings. Thus, we hold that appellant had no constitutional right to confront witnesses at sentencing-jury proceedings under Minn.Stat. § 244.10, subd. 5.

Appellant also argues that the Confrontation Clause of the Minnesota Constitution, article I, § 6, should be read to require a right to confront witnesses. Article I, § 6, of the Minnesota Constitution replicates the Sixth Amendment's right of the accused to confront all witnesses against them in criminal prosecutions and our supreme court has said the analysis is the same under both constitutions. *Henderson,* 620 N.W.2d at 695. Our state courts and legislature have not extended the right to confront witnesses to sentencing-jury proceedings, even though *Blakely* and *Crawford* are now three years old. And our supreme court's holding in *State v. Adams* that the admission of hearsay evidence in sentencing proceedings does not violate due process has not been overruled. 295 N.W.2d 527 (Minn.1980).

■ Our supreme court recently stated:

> It is axiomatic that a state supreme court may interpret its own state constitution to offer greater protection of individual rights than does the federal constitution. Indeed, as the highest court of this state, we are independently responsible for safeguarding the rights of [our] citizens. State courts are, and should be, the first line of defense for individual liberties within the federalist system.

*State v. Carter,* 596 N.W.2d 654, 657 (Minn.1999) (quotation omitted). But a decision to interpret the Minnesota Constitution differently from the federal constitution should not be made "cavalierly." *Id.* Further, it is not the role of *this* court to make a dramatic change in the interpretation of the Minnesota Constitution when the supreme court has not done so. *Minn. State Patrol Troopers Ass'n ex rel. Pince v. State, Dep't of Pub. Safety,* 437 N.W.2d

670, 676 (Minn.App.1989), *review denied* (Minn. May 24, 1989). The task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court. *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn.App.1987), *review denied* (Minn. Dec. 18, 1987). Therefore, we decline the invitation to extend the Minnesota Constitution's Confrontation Clause to sentencing-jury proceedings. Our analysis is consistent with our role as an error-correcting court and describes what we believe to be the current state of the law.[7] *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988) ("The function of the court of appeals is limited to identifying errors and then correcting them.").

## II.

Appellant argues that the admission of hearsay evidence during the sentencing-jury proceeding violated the Minnesota Rules of Evidence. Absent an erroneous interpretation of law, the question of whether to admit evidence is within the district court's discretion. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45–46 (Minn.1997).

Under Minn. R. Evid. 1101(b)(3), the rules of evidence do not apply at sentencing. The supreme court has had an opportunity, but has thus far declined, to change this rule in light of *Blakely* and *Crawford*. Therefore, because the rules of evidence do not apply at sentencing proceedings, the district court did not abuse its discretion by allowing the admission of hearsay evidence.

## III.

Appellant argues that the district court erred by refusing to give an accomplice-testimony instruction under Minn.Stat. § 634.04 (2004) at the close of the sentencing-jury proceeding. The omission of an accomplice-testimony jury instruction is reviewed under this court's harmless-error analysis.[8] *State v. Lee*, 683 N.W.2d 309, 316 (Minn.2004); *see also* Minn. R.Crim. P. 31.01 (stating that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded").

Once again, the issue of whether the district court must give an accomplice instruction during a sentencing-jury proceeding conducted under Minn.Stat. § 244.10, subd. 5, appears to be one of first impression. But because we concluded above that the admission of hearsay evidence was harmless error in light of appel-

---

**7.** We do note that Minn. R.Crim. P. 26.01, subd. 3, which took effect April 1, 2007, is incorporated into Appendix E to Minn. R.Crim. P. 15, and governs waiver of rights at sentencing trials on aggravating factors to support an upward durational departure from the guidelines. The rule, as well as the model waiver form in Appendix E, specifically include waiver of the right to have the prosecution witnesses testify in open court in the defendant's presence and to question those prosecution witnesses. The amended rule 26.01, subd. 3, implies that defendants do have the right to confront prosecution witnesses in sentencing trials conducted under Minn.Stat. § 244.10, subd. 5. But at this point our decision is governed by existing case law interpreting the Confrontation Clause, not what we think was intended in the amendments to the rules of criminal procedure.

**8.** In *State v. Jackson*, 726 N.W.2d 454, 461 (Minn.2007), our supreme court indicated that it had previously applied the "harmless-error" standard in *State v. Lee*, 683 N.W.2d at 316, without a discussion of whether that was the appropriate standard of review. Jackson also applied the harmless-error standard because the parties agreed that was the appropriate standard, and the same result would have been reached under the "plain-error" standard. But the court indicated that the question of the appropriate standard was in doubt. Because *Lee* has not been expressly overruled, we apply the harmless-error standard.

lant's own guilty pleas and tape-recorded statements, and that same analysis applies here because the hearsay evidence was from appellant's accomplice, we need not reach the issue of whether the district court was statutorily required to give an accomplice-testimony instruction to the sentencing jury. If it was harmless error for the court to admit the hearsay testimony of appellant's accomplice Glen McGee, then it was harmless error for the court to omit the accomplice-testimony jury instruction related to that evidence. And the evidence in appellant's guilty pleas and tape-recorded statements was sufficient to find beyond a reasonable doubt the two aggravating factors necessary for an upward durational departure. We therefore conclude that any potential error by the district court was harmless.

### IV.

■ Appellant argues the district court erred by sentencing him consecutively for his felon in possession of a firearm conviction in violation of *Blakely.* But consecutive sentencing does not violate *Blakely.*

*State v. Rannow,* 703 N.W.2d 575, 580–81 (Minn.App.2005); *State v. Senske,* 692 N.W.2d 743, 746–49 (Minn.App.2005). Therefore, appellant's sentence did not violate his Sixth Amendment jury-trial right.

### DECISION

Because we conclude that a criminal defendant does not have a federal or state constitutional right to confront witnesses against him in sentencing-jury proceedings, the rules of evidence do not apply during sentencing-jury proceedings, any potential error in failing to give an accomplice-testimony instruction to the jury was harmless error, and the district court did not err by imposing consecutive sentences, we affirm.

**Affirmed.**