*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0238**
**A23-0239**

State of Minnesota,
Respondent,

vs.

Ronald Eugene Brusacoram,
Appellant.

**Filed February 12, 2024**
**Reversed and remanded**
**Wheelock, Judge**

St. Louis County District Court
File Nos. 69HI-CR-21-648, 69HI-CR-21-658

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kimberly J. Maki, St. Louis County Attorney, Stacey M. Scholz, Assistant County Attorney, Hibbing, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Gaïtas, Presiding Judge; Smith, Tracy M., Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**WHEELOCK**, Judge

Appellant challenges his convictions for assault of a peace officer in the fourth degree, felony domestic assault, and unlawful possession of ammunition, arguing that the

circumstantial evidence was insufficient to support his conviction for unlawful possession of ammunition and that his attorney committed structural error by conceding his guilt with respect to the assault offenses. We reverse the convictions for unlawful possession of ammunition, assault of a peace officer in the fourth degree, and felony domestic assault and remand for a new trial on the assault charges.

**FACTS**

Shortly after 8:00 p.m. on an evening in August 2021, the Hibbing Police Department received a report of a domestic assault. The 911 caller reported that a man, later identified as appellant Ronald Eugene Brusacoram, was beating a woman and damaging her car. When an officer arrived on scene to respond to the call, Brusacoram yelled at the officer to leave. The officer continued to approach, and Brusacoram grabbed the officer's wrist with one hand while swinging a closed fist at the officer's face with the other hand, giving the officer a bruised and bloodied lip. Brusacoram then ran to a stack of logs and threw logs at the officer before fleeing the scene.

Shortly after this encounter, a second 911 call came in, and the caller reported that she saw Brusacoram running through her yard and explained that she knew him. She reported that Brusacoram, as he ran through the yard, exclaimed that he had hit an officer. When other officers followed up on the 911 call, the caller's partner, S.N., told them that Brusacoram had briefly fought with S.N. as he ran through the yard. S.N. also told officers that his 9mm pistol had gone missing. Brusacoram and his son, D.B., had been working for S.N. outside S.N.'s residence the day before, and S.N. suspected that D.B. stole the pistol when D.B. went inside S.N.'s residence. In an unrelated series of events, Hibbing

2

police officers had arrested D.B. for a different offense prior to speaking with S.N. and had found S.N.'s missing pistol during a search of D.B.

Around 11:30 p.m., officers went to a residence in the area of the domestic assault to investigate. The officers found Brusacoram's truck in the driveway, the doors to the residence locked, personal belongings scattered outside, and a fire burning in the yard. A fire was also burning inside the residence, and officers called the fire department and evacuated the surrounding homes. Officers forced one of the doors open but did not go inside the residence because the smoke was too thick.

Eventually, officers searched the residence and found a gun case and ammunition for a 9mm firearm in the drawer of a dresser. The record does not contain information about the search or Brusacoram's arrest.

The state filed two complaints against Brusacoram. The first complaint charged him with assault of a peace officer in the fourth degree, and the second charged him with unlawful possession of a firearm or ammunition, assault in the second degree, and felony domestic assault. In June 2022, Brusacoram waived his right to a jury and agreed to a simultaneous trial on both complaints based on stipulated exhibits and counsel's closing arguments submitted to the district court in writing. The district court found Brusacoram guilty of assault of a peace officer in the fourth degree, unlawful possession of ammunition, and felony domestic assault and sentenced him to concurrent sentences of 19 months, 60 months, and 30 months, respectively.

Brusacoram appealed from the convictions in both cases, and we consolidated the appeals.

**DECISION**

Brusacoram raises two issues on appeal. First, he asserts that his conviction for unlawful possession of ammunition under Minn. Stat. § 609.165, subd. 1b (2020), must be reversed because the state provided insufficient circumstantial evidence to prove the offense beyond a reasonable doubt. Second, he asserts that he is entitled to a new trial on the charges of felony domestic assault under Minn. Stat. § 609.2242, subd. 4 (2020), and assault of a peace officer in the fourth degree under Minn. Stat. § 609.2231, subd. 1(c)(1) (2020), because his attorney committed structural error by conceding his guilt without his consent. We address each argument in turn.

## I. The district court erred when it convicted Brusacoram of unlawful possession of ammunition because there is a reasonable inference from the circumstances proved that is inconsistent with guilt.

Brusacoram asserts that the state did not prove beyond a reasonable doubt that he constructively possessed the ammunition found in his home because a reasonable alternative inference exists that is inconsistent with his guilt. He argues that the evidence of possession—which was entirely circumstantial—was equally consistent with the theory that his son, D.B., exclusively possessed the ammunition. The state asserts that, to affirm the conviction for unlawful possession of ammunition, this court needs to conclude only that Brusacoram *could have* possessed the ammunition because the district court made that inference when it found him guilty.[1] The state also points out that Brusacoram did not

---

[1] In its brief, the state asks this court to strike parts of Brusacoram's brief that raise issues not decided by the district court. However, we decline to consider this request because the state did not comply with rules of appellate procedure when making it. For this court to

4

provide evidence that D.B. lived at the residence to support his alternative theory and that, even if D.B. possessed the ammunition, the district court did not err because it was possible for Brusacoram to possess the ammunition jointly with D.B.

We apply the same standard to a district court's findings as to a jury's when reviewing the sufficiency of the evidence supporting a conviction. *State v. Holliday*, 745 N.W.2d 556, 562 (Minn. 2008). We review the district court's determination of guilt de novo based on its findings of fact, *State v. Sam*, 859 N.W.2d 825, 830 (Minn. App. 2015), and we review its findings of fact for clear error, *State v. Andersen*, 784 N.W.2d 320, 334 (Minn. 2010). "If, on the entire evidence, we are left with the definite and firm conviction that a mistake occurred, then the district court clearly erred" in its finding of fact. *Id.* But a finding of fact must be a true finding of fact to receive this level of deference; if a legal conclusion is labeled as a finding of fact, it will not be reviewed through the lens of clear error. *Graphic Arts Educ. Found., Inc. v. State*, 59 N.W.2d 841, 844 (Minn. 1953).

A district court cannot find a defendant guilty unless the state proves every element of the charged offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 368 (1970). To find a defendant guilty of unlawful possession of ammunition, the state must prove, among other elements, that the person both knowingly possessed the ammunition

---

grant the requested relief, a party must make a motion pursuant to Minnesota Rule of Civil Appellate Procedure 127 and Special Rule of Practice for the Minnesota Court of Appeals 8.

and that the possession was either constructive or actual. *State v. Harris*, 895 N.W.2d 592, 601 (Minn. 2017); *State v. Salyers*, 858 N.W.2d 156, 161 (Minn. 2015).

To prove constructive possession, the state must show either that the object was found "in a place under defendant's exclusive control to which other people did not normally have access" or that it was found "in a place to which others had access" and "there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it." *Salyers*, 858 N.W.2d at 159 (quoting *State v. Florine*, 226 N.W.2d 609, 611 (Minn. 1975)). The constructive-possession doctrine requires a strong inference "that the defendant at one time physically possessed the [ammunition] and did not abandon his possessory interest in the [ammunition] but rather continued to exercise dominion and control over it up to the time of the arrest." *Id.* (quoting *Florine*, 226 N.W.2d at 610).

With respect to the second type of constructive possession, the state cannot show only that the defendant exercised dominion and control over the location in which the contraband was found; rather, the state must show that the defendant exercised dominion and control over the contraband itself. *Sam*, 859 N.W.2d at 834. However, if the state shows that the defendant exercised dominion and control over the location *and* knew that the contraband was there, that may be enough to prove constructive possession. *See State v. Lee*, 683 N.W.2d 309, 316 (Minn. 2004) (holding that because defendant gave his cousin permission to store contraband in defendant's garage and allowed gang members into the garage, defendant had constructive possession of the contraband).

6

A person may constructively possess an item jointly with another person; in other words, a person may be convicted of possession even though another person simultaneously possessed the contraband. *See State v. Lorenz*, 368 N.W.2d 284, 287-88 (Minn. 1985) (holding that simply occupying a dwelling in which contraband is found does not constitute possession of contraband, that possession of contraband is not always limited to a single person, and that two or more people can jointly possess contraband). That occupants share a home does not, on its own, prove that the occupants each constructively possessed contraband found in the home. *Id.* at 288; *see Sam*, 859 N.W.2d at 834 (stating that when there is not exclusive possession of the location, one cannot automatically infer possession of the contraband); *State v. Dickey*, 827 N.W.2d 792, 797 (Minn. 2013) (stating that more facts, such as a suspect's personal items near the contraband or contraband within a suspect's bedroom, must be found in order to support a conviction for possession). *But see State v. Denison*, 607 N.W.2d 796, 800 (Minn. App. 2000) (concluding that circumstantial evidence was sufficient to show spouses' joint constructive possession of contraband when it was discovered in common areas of home), *rev. denied* (Minn. June 13, 2000).

The state relied on circumstantial evidence to prove that Brusacoram constructively possessed the ammunition. Circumstantial evidence is "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *Harris*, 895 N.W.2d at 599 (quotation omitted). A conviction based on circumstantial evidence receives heightened scrutiny. *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). When reviewing circumstantial evidence, this court conducts a two-step inquiry in which we first identify

the circumstances proved and second "independently consider the reasonable inferences that can be drawn from those circumstances." *Harris*, 895 N.W.2d at 598. The reasonable inferences must be "inconsistent with any rational hypothesis except that of guilt." *Id.* (quotation omitted). If any "reasonable or rational inferences exist which are inconsistent with guilt, the state has not presented sufficient evidence as a matter of law." *Sam*, 859 N.W.2d at 831. And we do not defer to the fact-finder's choice between reasonable inferences. *Id.* at 833. "Circumstantial evidence must form a complete chain that, as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011). Each piece of circumstantial evidence is not viewed in isolation, but rather as a whole. *Andersen*, 784 N.W.2d at 332.

With this framework in mind, we turn to Brusacoram's case. The district court determined that Brusacoram constructively possessed the ammunition based on its findings that the doors to the residence were locked, Brusacoram's truck was in the driveway, and the ammunition was found in the residence—a place to which others normally did not have access. The district court inferred from these circumstances that the residence was Brusacoram's, that no other people were present in the residence prior to the officers finding the ammunition, and thus, that the ammunition must have been in Brusacoram's possession. The district court further found that Brusacoram knew of the gun and further reasoned—based on its findings that the ammunition was compatible with S.N.'s stolen firearm, that S.N.'s firearm was found in D.B.'s possession, and that Brusacoram was with

8

D.B. when S.N. believed the firearm was stolen—that Brusacoram must also have known about the ammunition.

We apply the circumstantial-evidence standard of review to the district court's findings. First, we identify the circumstances proved, which are as follows:

- Brusacoram and D.B. worked together outside of S.N.'s home;

- S.N. realized that his 9mm handgun was missing from his home;

- S.N. thought D.B. stole the 9mm handgun during the time that he was working with Brusacoram at S.N.'s home because D.B. went inside of S.N.'s home;

- Officers engaged in an investigation unrelated to the facts of this case found a 9mm handgun in D.B.'s bag;

- Officers investigating Brusacoram in this case found 9mm ammunition in a dresser drawer in a residence;

- The ammunition found was compatible with a 9mm handgun; and

- At the time the officers found the ammunition in the residence, the doors to the residence were locked and Brusacoram's truck was parked in the driveway.

Next, we "independently consider the reasonable inferences that can be drawn from those circumstances" while viewing the circumstances proved as a whole and without deferring to the fact-finder's choice between reasonable inferences. On these circumstances proved, at least two reasonable or rational inferences inconsistent with guilt exist: (1) the place in which the ammunition was found was not under Brusacoram's exclusive control or (2) Brusacoram did not exercise dominion and control over the ammunition. Furthermore, the circumstances proved do not show that Brusacoram knew

9

that the ammunition was in his residence.  We must therefore conclude that the state has not presented sufficient evidence as a matter of law.

The state did not provide evidence that connected Brusacoram to the location in the residence or the dresser in which officers found the ammunition.  This case is unlike *State v. Colsch*, in which the supreme court concluded that the evidence was sufficient to support the jury's finding that the male defendant constructively possessed controlled substances found by officers in a bedroom that contained men's clothing as well as papers and a checkbook with the defendant's name on them.  284 N.W.2d 839, 841 (Minn. 1979).  This case is also unlike *Lee*, in which the supreme court affirmed that the defendant constructively possessed contraband because he permitted gang members to spend time in his garage and knew that they stored contraband there.  683 N.W.2d at 316-17.  The circumstances proved at trial here are unlike those in *Colsch* and *Lee* because the state provided no evidence (1) connecting Brusacoram to either the location in the residence or the dresser in which officers found the ammunition or (2) showing that Brusacoram knew about the ammunition.

The circumstances proved here are akin to those in *State v. Krueger*, a nonprecedential but persuasive opinion.  No. A19-0459, 2020 WL 413722, at *2 (Minn. App. Jan. 27, 2020); *see* Minn. R. Civ. App. P. 136.01, subd. 1(c) ("[N]onprecedential opinions may be cited as persuasive authority.").  In *Krueger*, we determined that the defendant did not constructively possess a firearm found under a bed in his roommate's bedroom when the defendant slept in the living room and the record contained no testimony or evidence linking the defendant to the firearm.  2020 WL 413722, at *2.  Here, there is

10

no evidence in the record to show that Brusacoram occupied the room in which the ammunition was found, and thus, the evidence is insufficient to support a determination that Brusacoram constructively possessed ammunition found in that room. Without more, the circumstances proved cannot support a determination that Brusacoram constructively possessed the ammunition beyond a reasonable doubt.

Because the circumstances proved do not lead so directly to Brusacoram's guilt as to exclude beyond a reasonable doubt an inference other than guilt, the evidence is insufficient, and we reverse Brusacoram's conviction for unlawful possession of ammunition.

## II. Brusacoram's trial counsel committed structural error by admitting Brusacoram's guilt of felony domestic assault and assault of a peace officer in the fourth degree.

Brusacoram asserts that his trial counsel committed structural error in his written argument to the district court when he conceded Brusacoram's guilt of assault of a peace officer in the fourth degree and felony domestic assault without Brusacoram's consent. He also asserts that, because this is a structural error, prejudice is presumed, the convictions for these two offenses must be reversed, and his case must be remanded for a new trial. The state concedes that the record does not support a finding that Brusacoram waived his presumption of innocence on these charges or otherwise acquiesced to his counsel's concessions of guilt.

We recall that Brusacoram waived his right to a jury and that the parties agreed to a stipulated-evidence trial with written closing arguments. In Brusacoram's written argument, his counsel conceded guilt in two places, stating: "Brusacoram comes now

requesting the Court find him guilty of 69HI-CR-21-648 and Count III on 69HI-CR-21-658," and, "Mr. Brusacoram's admissions to [S.N.] provide evidence for a conviction on 69HI-CR-21-648. The 911 call provides evidence for a conviction on Count III on 69HI-CR-21-658. Mr. Brusacoram's prior convictions in 2015 and 2016 provide the necessary prior qualified domestic related convictions." Because Brusacoram's trial counsel conceded these points, the state did not argue them in its written submission to the district court. The district court found Brusacoram guilty of both counts.[2]

Under the Sixth Amendment, a defendant has the right to maintain their innocence throughout trial. *See* U.S. Const. amend. VI; *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018). Whether to concede guilt is a decision that only the defendant can make. *State v. Luby*, 904 N.W.2d 453, 457 (Minn. 2017). If the defendant's counsel usurps this right by conceding the defendant's guilt without their consent, prejudice is presumed and "the defendant is entitled to a new trial, regardless of whether he would have been convicted without the admission." *Id.* (quotation omitted). In *McCoy*, the Supreme Court stated that an unauthorized concession of guilt is a structural error because a structural error is one that attacks "the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty," and its effects create a "fundamental unfairness." 138 S. Ct. at 1511 (quotation omitted).

---

[2] We note that Brusacoram did not object or raise ineffective assistance of counsel or violation of his right to maintain his innocence to the district court based on the unauthorized admissions before the district court entered judgment, and we further note that Brusacoram could not be present or object as he would have been able to during an in-person trial because the admissions of guilt occurred via written submissions in a stipulated-evidence trial.

To determine whether counsel conceded a defendant's guilt without consent, we conduct a two-step review. *Luby*, 904 N.W.2d at 457. We first review "the record de novo to determine whether defense counsel made a concession of guilt." *Id.* If defense counsel conceded guilt, then we must determine whether the defendant acquiesced to the concession. *Id.* This court may infer that the defendant acquiesced if the concession strategy was apparent throughout the trial and the defendant failed to object or if "the concession was an understandable strategy and the defendant was present [and] understood a concession was being made, but failed to object." *Id.* at 459 (quotation omitted). If the defendant did not acquiesce to the concession, then the remedy is to award a new trial. *Id.* at 457.

Brusacoram's trial counsel conceded Brusacoram's guilt twice in the written closing argument. Counsel requested that the district court find Brusacoram guilty of two of the charges against him—assault of a peace officer in the fourth degree and felony domestic assault. Then, counsel conceded that the statement from S.N., the 911 call, and Brusacoram's criminal record provide sufficient evidence to find him guilty of those two charges. It is clear that Brusacoram's counsel made a concession of guilt, satisfying the first step.

As to the second step of our analysis, the record contains no evidence that Brusacoram acquiesced to the concessions of guilt on either assault charge. At each stage of the stipulated-evidence trial up to the written closing argument, Brusacoram asserted his innocence. He did not enter any plea other than not guilty, the case never settled, and all four charges proceeded to trial. We see no basis on which to conclude that conceding guilt

13

was a trial strategy that appeared throughout the trial.  And, because the admissions took place via written submissions, Brusacoram was not present and could not object.  We cannot say that Brusacoram acquiesced to the concessions of guilt, and we conclude that Brusacoram's counsel committed structural error and that the two assault convictions must be reversed and the case remanded for a new trial.

In sum, as to Brusacoram's conviction for unlawful possession of ammunition, because the circumstances proved do not lead so directly to his guilt as to exclude beyond a reasonable doubt an inference other than guilt, we reverse the district court's conviction on that charge for insufficiency of the evidence.  As to Brusacoram's two assault convictions, because the Sixth Amendment protects the defendant's freedom, especially from incarceration, and there is no evidence that Brusacoram waived his right to maintain his innocence, we conclude that his counsel committed structural error when conceding Brusacoram's guilt.  Therefore, we reverse Brusacoram's convictions for assault of a peace officer in the fourth degree and felony domestic assault and remand to the district court for a new trial.

**Reversed and remanded.**