STATE of Minnesota, Respondent,

v.

Thomas Michael LUBY, Appellant.

A16-1213

Supreme Court of Minnesota.

Filed: December 6, 2017

Lori Swanson, Attorney General, Saint Paul, Minnesota; and James C. Backstrom, Dakota County Attorney, Kathryn M. Keena, Assistant County Attorney, Hastings, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant Public Defender, Saint · Paul, Minnesota, for appellant.

## OPINION

McKEIG, Justice.

Appellant Thomas Michael Luby was convicted of first-degree premeditated murder, Minn. Stat. § 609.185(a)($l$) (2016), and second-degree intentional murder, Minn. Stat. § 609.19, subd. 1(1) (2016), in connection with the stabbing death of his girlfriend, K.A. Luby appeals, arguing that he is entitled to a new trial because his defense counsel provided ineffective assistance by conceding the only disputed elements of the charged offenses—premeditation and intent—without his consent. We reverse both of Luby's convictions and remand this case to the district court for a new trial.

## FACTS

Thomas Luby was charged with second-degree intentional ·murder in · connection with the ·stabbing · death of his girlfriend K.A. *See* Minn. Stat. § 609.19, subd.. 1(1) (requiring an intentional killing). A grand jury subsequently indicted Luby for first-degree premeditated murder. *See* Minn. Stat. § 609.185(a)($l$) (requiring a premeditated and intentional killing).

At trial, Luby admitted to stabbing K.A. to death with a knife while intoxicated. According to Luby, he and K.A. both suffered from alcoholism. On August 6, 2015, they had been drinking for 8 days straight. That evening, they drank nearly all of a 1.75-liter bottle of vodka without eating. Luby claimed that he consumed the majority of the bottle—approximately 40 ounces—but that K.A. was more intoxicated than he was because "she couldn't· drink very· much without losing· control" due to gastric bypass surgery. Luby took the vodka away from K.A., but she kept begging him for more alcohol.

Luby claimed that he went in and out of consciousness during the remainder of the evening, and that he had an incomplete memory of what happened. At some point, he awoke to K.A. holding a butcher knife to his throat. Luby took the knife from K.A. and cut her stomach. Later that night, Luby again awoke to K.A. holding the knife to his throat. He disarmed her and eventually stabbed her with the knife, which caused her death.[1]

After some time, Luby called 911 and reported to police that he had killed K.A. Police found empty vodka bottles throughout the apartment and smelled alcohol on Luby. Officers did not test Luby's blood-alcohol-content level, but determined that K.A.'s blood had an alcohol-content level of .45.

Luby's strategy at trial was to concede that he had caused K.A.'s death, but to argue that his intoxication prevented him from forming the intent to kill her. In his opening statement, defense counsel told the jury that "we really don't have much dispute as to what the evidence will show." But he asked the jury to "consider the most serious of the elements" of the charged offenses, and to specifically focus on the word "intent," which he said "is what really will be in dispute here." Luby testified at trial that he "never had an intent to kill" K.A.

Prior to closing arguments, the district court instructed the jury on premeditation, stating that "some amount of time must pass between the formation of the intent and the carrying out of the act," and that "an unconsidered or rash impulse, even though it includes an intent to kill, is not premeditated."

█ During closing arguments, the State focused on establishing both intent and premeditation, arguing that Luby was not too intoxicated to form the intent to kill and that the nature of the killing established premeditation. Defense counsel reminded the jury that "the State must prove each and every element," but again directed the jury to focus on "the most important element in this case ... the intent element." As he described the elements of first-degree murder, counsel made the statement at issue in this appeal:

> First degree murder requires premeditation and the intent to kill. The instruction will be given to you in writing so you can go over it. *We're not really disputing the premeditation part. I would submit to you that intent element is the one that's in question here.* For the second degree, same as first degree, but without premeditation.

(Emphasis added.) Counsel did not mention premeditation again, but reiterated that "what we are attempting to negate, is the intent required, and intoxication is only a defense to intent."[2]

The State requested rebuttal, during which it told the jury several times that defense counsel had conceded the element

---

1. K.A.'s body was discovered with approximately 70 stab wounds and some bruising. Luby's statements during police interviews and at trial differed as to whether he remembered stabbing K.A. once in the mouth or neck area, or just assumed that he had stabbed her after he found her dead on the floor. Luby claimed during a police interview that the bruising had occurred because K.A. fell and hit her head while intoxicated.

2. A factfinder may consider intoxication "in determining whether [the defendant] acted with intent *and* premeditation." *State v. Wahlberg*, 296 N.W.2d 408, 416 (Minn. 1980) (emphasis added). Voluntary intoxication is thus a defense to premeditation, contrary to defense counsel's assertion that it is *only* a defense to intent. Not only did defense counsel misstate the law, but he also waived Luby's voluntary intoxication defense with respect to the premeditation element.

of premeditation. The State started its rebuttal by stating, "[Defense counsel] told you that premeditation is not an issue. They're conceding premeditation." Defense counsel objected without stating the basis for his objection. The district court responded by directing the jurors to "rely on their recollection of the arguments and the facts in the case." The State then continued to argue that premeditation had been conceded, and neither defense counsel nor Luby made any further objections.

After approximately 9 hours of deliberating, the jury returned a verdict of guilty on Luby's second-degree intentional murder charge. After two additional hours, the jury returned a verdict of guilty on the first-degree premeditated murder charge. Luby was convicted of both charges, and sentenced to life imprisonment without the possibility of release.

## ANALYSIS

■ On appeal, Luby argues that he is entitled to a new trial because his defense counsel provided ineffective assistance by conceding guilt without his consent. To succeed on an ineffective assistance of counsel claim, a defendant must show that (1) "his attorney's performance fell below an objective standard of reasonableness," and (2) "a reasonable probability exists that the outcome would have been different, but for counsel's errors." *Gail v. State*, 732 N.W.2d 243, 248 (Minn. 2007); *see also Strickland v. Washington*, 466 U.S. 668, 687–88, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When defense counsel concedes the defendant's guilt without consent, "counsel's performance is deficient and prejudice is presumed." *State v. Prtine*, 784 N.W.2d 303, 317–18 (Minn. 2010). We have explained that "[t]he deci-

sion to admit guilt is the defendant's decision to make." *Dukes v. State*, 621 N.W.2d 246, 254 (Minn. 2001), *modified on other grounds by Ferguson v. State*, 645 N.W.2d 437 (Minn. 2002). Thus, "[i]f that decision is taken from the defendant, the defendant is entitled to a new trial, regardless of whether he would have been convicted without the admission." *Prtine*, 784 N.W.2d at 318.

■ We apply a two-step analysis to ineffective-assistance claims involving an alleged unauthorized concession of guilt. First, we review the record de novo to determine whether defense counsel made a concession of guilt. *Id.* If so, the defendant is entitled to a new trial unless he "acquiesced in that concession." *Id.*

## I.

■ We must first determine whether defense counsel made a concession of guilt. A concession may be express or implied. *See State v. Provost*, 490 N.W.2d 93, 97 (Minn. 1992) (recognizing an express concession); *State v. Wiplinger*, 343 N.W.2d 858, 861 (Minn. 1984) (recognizing an implied concession).

Here, Luby argues that defense counsel expressly conceded his guilt when, during his closing argument, he told the jury that he was "not really disputing the premeditation part" of first-degree murder, but that the "intent element [was] the one" in question.[3] Luby argues that this statement expressly conceded premeditation, which necessarily conceded intent. We agree.

■ Defense counsel's statement expressly conceded the premeditation element. And, as the district court instructed the jury here, "[p]remeditation, by defini-

3. Defense counsel had already conceded causation and Luby's identity as the killer, so premeditation and intent were the only ele-

ments of the crime left in dispute for closing arguments.

tion, requires some amount of time to pass between formation of the *intent* and the carrying out of the act." *State v. Moore*, 481 N.W.2d 355, 360 (Minn. 1992) (emphasis added); *see also State v. Goodloe*, 718 N.W.2d 413, 419 (Minn. 2006) (explaining that premeditation requires the State to "prove that before the commission of the act *but after the defendant formed the intent to kill* some appreciable time passed during which the defendant considered, planned, or prepared to commit the act" (emphasis added)). Thus, because the formation of an intent to kill is a prerequisite to premeditation, conceding premeditation also necessarily conceded intent.[4] *See State v. Anderson*, 789 N.W.2d 227, 240–41 (Minn. 2010) (holding that a jury instruction "sufficiently indicate[d] to the jury that [the defendant] must have formed an intent to kill … and then premeditated.").

The State claims that a reasonable person would not consider defense counsel's one statement during closing arguments to be a concession on premeditation or intent when counsel consistently argued that Luby was too intoxicated to form the required mental state. But this argument is controverted by the exchange among defense counsel, the State, and the district court that followed defense counsel's clos-

ing argument. In its rebuttal closing, the State amplified the concession by immediately telling the jury that the defense had conceded premeditation. When defense counsel made an unspecified objection to this statement, the district court did not seek clarification, but simply instructed the jury to "rely on their recollection of the arguments and the facts in the case." And when the State repeated its claim that the defense had conceded premeditation, defense counsel did not object further or request surrebuttal to address the issue. *See Torres v. State*, 688 N.W.2d 569, 574 (Minn. 2004) (holding that defense counsel's closing statement was not a concession when counsel requested surrebuttal to clarify that no concession occurred).

The State further contends that the jury's lengthy deliberations show that it did not consider any element conceded. But it is well established that we "will make no inquiry into the nature or extent of [jury] deliberations." *In re Hurlbut's Estate*, 126 Minn. 180, 148 N.W. 51, 52 (1914). Further, we need not conclude that defense counsel's concession actually prejudiced the jury's decision; rather, if there was an unauthorized concession, prejudice is presumed and Luby is entitled to a new trial "regardless of whether he would have

---

4. The dissent argues that defense counsel's concession on premeditation did not concede intent because counsel's closing statement distinguished between the two elements, and intent was consistently disputed throughout trial. We recognize that intent is a separate element from premeditation; however, the element of premeditation presupposes the existence of intent, as discussed above. It is possible to have an intent to kill without premeditating the killing, but not vice versa. The dissent attempts to find refuge in repeated arguments by defense counsel about the absence of intent. But this is exactly why the concession was so damaging to the defense strategy. The jury was repeatedly reminded that there was no dispute on the element of premeditation, and conse-

quently, of intent as well. Indeed, the court instructed the jury regarding the inseparable connection between premeditation and intent, explicitly contradicting defense counsel's strategy of distinguishing the two elements. Defense counsel's express concession of premeditation also impliedly conceded intent.

Moreover, *Wahlberg* highlights the link between intent, premeditation, and the defense of intoxication. *See* 296 N.W.2d at 416. Indeed, no law supports the proposition that a defendant could be too intoxicated to form an intent to kill, but lucid enough to premeditate a murder. By claiming that Luby's intoxication was only relevant to his intent, yet conceding premeditation, defense counsel also effectively conceded Luby's sole defense.

been convicted without the admission." *Prtine*, 784 N.W.2d at 318. Accordingly, we hold that Luby's counsel conceded his guilt.

## II.

 Because Luby's counsel conceded guilt, Luby is entitled to a new trial unless he consented to the concession. *Id.* When, as here, there is no evidence of express consent, we "look at the entire record to determine if the defendant acquiesced in his counsel's strategy." *Id.* Acquiescence may be implied in certain circumstances, such as (1) when defense counsel uses the concession strategy throughout trial without objection from the defendant, or (2) when the concession was an "understandable" strategy and the defendant was present, understood a concession was being made, but failed to object. *State v. Jorgensen*, 660 N.W.2d 127, 132–33 (Minn. 2003). "When the record is unclear as to whether the defendant acquiesced in his counsel's concession," we have remanded the issue for an evidentiary hearing. *Prtine*, 784 N.W.2d at 318.

Luby argues that the record clearly establishes that he did not acquiesce in defense counsel's concession because counsel did not concede Luby's guilt until closing arguments, and conceding guilt was not an understandable strategy in this case. The State agrees that the record is devoid of evidence of Luby's consent or acquiescence, but requests that we remand this issue for an evidentiary hearing.

We agree with Luby that the record clearly establishes that he did not acquiesce in defense counsel's concession. First, defense counsel did not concede the element of premeditation until closing arguments, as Luby observes, after defense counsel had been consistently silent on this element, making it difficult to conclude that Luby somehow acquiesced in a strategy that manifested itself only at the end of trial. *See Torres*, 688 N.W.2d at 573 (stating that "silence on a particular element of a crime is not the same as a concession"). Second, because intent is a prerequisite to premeditation, *Moore*, 481 N.W.2d at 360, counsel's concession was inconsistent with the trial strategy of arguing that Luby was unable to form the requisite intent to kill due to voluntary intoxication. Indeed, counsel's concession was not an understandable trial strategy because it admitted Luby's guilt to the only disputed elements of both of the charged offenses, the greater of which carried a mandatory life sentence. Accordingly, we conclude that Luby did not acquiesce in his counsel's concession.

Luby's defense counsel provided ineffective assistance when he conceded Luby's guilt to first-degree premeditated and second-degree intentional murder without his consent. We therefore reverse Luby's convictions and remand for a new trial.

## CONCLUSION

For the foregoing reasons, we reverse the appellant's convictions and remand to the district court for a new trial on both charges.[5]

Reversed and remanded.

Dissenting, Chutich, J., Gildea, C.J.

## DISSENT

CHUTICH, Justice (dissenting).

The majority asserts that intent is a prerequisite to premeditation. Applying

---

**5.** Luby also appeared to raise a claim that defense counsel's concession deprived him of his right to a jury trial on every element of the charged offenses. *See State v. Kuhlmann*, 806 N.W.2d 844, 848 (Minn. 2011). Because we hold that Luby is entitled to a new trial due to ineffective assistance of counsel, we need not address this alternative argument.

this assertion to the facts here, the majority concludes that a single comment about *premeditation* during defense counsel's 28-page closing argument requires us to hold that defense counsel conceded *the element of intent*, even though counsel stressed that, "[the] intent element is the one that is in question here"—an assertion that he then emphasized nine times during his closing argument.[1] Because the record shows that defense counsel did not concede every element of the charged offenses, leaving nothing left in dispute, the majority's reliance on the per se rule of ineffective assistance of counsel is misplaced. Accordingly, I respectfully dissent.

### I.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *State v. Hokanson*, 821 N.W.2d 340, 357 (Minn. 2012). To establish a violation of the right to effective assistance of counsel, a defendant must show that his or her attorney's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Gail v. State*, 732 N.W.2d 243, 248 (Minn. 2007).

Certain unprofessional errors, however, always warrant a new proceeding. One such error is when defense counsel concedes a defendant's guilt without his or her consent. *State v. Prtine*, 784 N.W.2d 303,

317–18 (Minn. 2010) ("When counsel for the defendant admits a defendant's guilt without the defendant's consent, the counsel's performance is deficient and prejudice is presumed."). This per se rule reflects the importance of the decision to concede guilt, which waives several constitutional rights and effectively guarantees that the defendant will be punished for the alleged acts. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (stating that after a plea of guilty, "nothing remains but to give judgment and determine punishment"); *State v. Wiplinger*, 343 N.W.2d 858, 861 (Minn. 1984) (stating that the decision to admit guilt is so critical that it must remain with the defendant). Consequently, we have applied the per se rule when defense counsel has conceded *every* element of the charged offense and left nothing in dispute. *See, e.g.*, *Prtine*, 784 N.W.2d at 317–18 (applying the per se rule when defense counsel conceded every element of second-degree intentional murder while discussing the defendant's claim of self-defense); *State v. Jorgensen*, 660 N.W.2d 127, 133 (Minn. 2003) (explaining that defense counsel's strategy was to admit all the elements of second-degree intentional murder in an effort to increase credibility with the jury and to obtain an acquittal on the most serious charge).

According to the majority, defense counsel conceded both premeditation and intent when he told the jurors, "We're not really disputing the premeditation part," and therefore the per se rule of deficient performance applies.[2] Although there is no

---

1. The seven-word passing comment about premeditation appears in the following context: "First degree murder requires premeditation *and* the intent to kill. The instruction will be given to you in writing so you can go over it. *We're not really disputing the premeditation part.* I would submit to you that intent

element is the one that's in question here. For the second degree, same as first-degree, but without premeditation." (Emphasis added.)

2. The majority contends that a reasonable juror would have concluded that defense counsel's isolated comment about premeditation

doubt that intent and premeditation are distinct elements of first-degree premeditated murder, Minn. Stat. § 609.185(a)(1) (2016) (defining first-degree murder as "caus[ing] the death of a human being with premeditation and with intent to effect the death of the person"), the majority asserts that "by definition" the elements of intent and premeditation are inextricably linked. More specifically, the majority asserts that intent is a legally required prerequisite to premeditation because we have said "premeditation" requires "some amount of time to pass between the formation of the intent and the carrying out of the act." *State v. Moore*, 481 N.W.2d 355, 360 (Minn. 1992). I need not consider whether this assertion accurately describes Minnesota law because, even applying this principle, a concession of intent was not made here.

### A.

If the majority's assertion concerning the inextricable link between intent and premeditation is accurate, it is illogical to hold that defense counsel conceded premeditation during his closing argument when he repeatedly challenged the required prerequisite of intent. Since premeditation requires some time to pass after the intent to kill was formed, if no

intent to kill is ever formed, premeditation cannot occur.

The record shows that defense counsel vigorously challenged the element of intent throughout the case, including during closing arguments. At the beginning of his closing argument, defense counsel told the jurors, "I'll submit to you, right now, that after hearing the facts and the law and the evidence, again, very briefly, you'll be left with, really no other choice but to find Mr. Luby not guilty *because he could not formulate intent.*" [3] (Emphasis added.) He highlighted this message throughout his closing argument, telling jurors: "[w]hat we are negating ... *is the intent,*" "he's intoxicated and *not able to formulate intent,*" "you have *the lack of intent* because of intoxication," "he just *wasn't capable of forming intent,*" and "you have to find him not guilty" because "the law offers [intoxication] *as a negation of the intent.*" (Emphasis added.)

Defense counsel also emphasized the significance of the intent element, telling the jurors: "the *most important element* in this case, *is the intent element,*" "[y]ou should consider ... whether the Defendant was *capable of forming the required intent,*" and you need to decide "whether

---

was a concession of guilt based in part upon a later exchange that occurred among the prosecutor, defense counsel, and the court during the prosecutor's rebuttal closing. I disagree. The district court has "the duty" to ensure that an accused receives a fair trial. *State v. Litzau*, 650 N.W.2d 177, 185 n.6 (Minn. 2002). If, as the majority contends, defense counsel stood before the jury and actually conceded his client's guilt to *all* of the charged offenses, including first-degree murder, one would expect the district court's response to be more vigorous than an instruction that jurors "rely on their recollection of the arguments and the facts in the case." In my view, the district court's tepid response to defense counsel's passing comment about premeditation and defense counsel's later objection to the prosecution's characterization of

that remark actually *undermines* the contention that a reasonable juror would have understood the single statement about premeditation to have conceded guilt to first-degree murder.

3. Defense counsel laid the ground work for this argument throughout the trial. During his opening statement he implored the jurors to: "pay attention to the word intent. The word, intent, is what really will be in dispute here, I anticipate, at the end of the trial." Defense counsel continued that he would "be disputing ... intent." During Luby's direct examination, defense counsel asked if he had an intent to kill K.A., to which Luby replied, "I never had an intent to kill [her]."

Mr. Luby was intoxicated to the point that *he was incapable of forming intent.*" (Emphasis added.) This record establishes that defense counsel vigorously challenged the element of intent during his closing argument. If accurate, the majority's assertion—that intent is a prerequisite to premeditation—logically precludes a conclusion that defense counsel conceded *premeditation* when he vigorously challenged intent throughout the trial. Accordingly, even using the majority's analysis, the per se rule of ineffective assistance of counsel would not apply because defense counsel did not concede the elements of intent or premeditation.[4]

### B.

On the other hand, if the majority's assertion concerning the inextricable link between intent and premeditation does not hold true, any concession of premeditation has no effect on the element of intent. Minnesota statutes and our case law make clear that premeditation and intent are distinct elements of first-degree murder. Minn. Stat. § 609.185(a)(1); *Moore,* 481 N.W.2d at 360. Under this analysis, counsel would have had to state specifically that he was conceding intent for us to hold that intent was conceded. Counsel made no such concession. Instead, he expressly stated numerous times that the element of intent was "in question."

In sum, if one assumes that the majority's inextricable link between intent and premeditation is *not* sound, the per se rule of ineffective assistance of counsel cannot be invoked. Here, because defense counsel expressly stated that the element of intent was "in question," the alleged concession of premeditation had no effect on the element of intent.[5]

### II.

Under either of the two theories discussed above, the per se rule of ineffective assistance of counsel simply does not apply. But this conclusion does not end the analysis because counsel may have otherwise been ineffective under *Strickland.* As mentioned above, a criminal defendant is entitled to a new trial if he or she can show that defense counsel's representation "fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Gail,* 732 N.W.2d at 248.

I need not decide whether defense counsel's comment about premeditation fell below an objective standard of reasonableness, however, because, even if it did, Luby has not shown that the result of the proceeding would have been different. *See State v. Blom,* 682 N.W.2d 578, 624 (Minn. 2004) ("We need not evaluate both factors

---

4. Because defense counsel did not concede premeditation, we need not consider whether Luby was denied his constitutional right to have a jury determine his guilt on every element of the charged offenses.

5. If defense counsel conceded the premeditation element, we must consider the district court's failure to obtain the defendant's personal waiver of the right to a jury trial on a stipulated element of the charged offense of first-degree murder. *See State v. Kuhlmann,* 806 N.W.2d 844, 850 (Minn. 2011) (discuss-

ing the court's failure to do so). Based on the record, the alleged error was harmless because, as set forth below, the evidence of Luby's premeditation is so overwhelming that no reasonable juror could have concluded that the murder was not premeditated. *See Neder v. United States,* 527 U.S. 1, 8–9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (applying harmless error test when the jury instructions erroneously omitted an element of the charged offense).

if either one is determinative."). To determine whether the result of the proceeding would have been different, an appellate court must consider "the totality of the evidence before the factfinder." *State v. Nissalke*, 801 N.W.2d 82, 111 (Minn. 2011) (quoting *Gates v. State*, 398 N.W.2d 558, 562 (Minn. 1987)). When the evidence of guilt is "very strong," we have concluded that the result of the proceedings would not have been different. *Gates*, 398 N.W.2d at 563.

Here, the evidence of premeditation is very strong. In evaluating whether premeditation existed we consider a number of factors, including "motive, and the nature of the killing." *Loving v. State*, 891 N.W.2d 638, 644 (Minn. 2017). Luby had a motive to murder K.A. because he was angry and fought with her before the killing. *See State v. Hurd*, 819 N.W.2d 591, 600-01 (Minn. 2012) (describing evidence that the defendant was angry and fought with the victim as motive evidence relevant to premeditation).

In addition, the nature of the killing also provides strong support for a finding of premeditation. K.A. was stabbed over 70 times and the killing took place over a period of hours. *See Hurd*, 819 N.W.2d at 601 (explaining that evidence of "a long and severe attack" may be enough to prove premeditation); *State v. Smith*, 367 N.W.2d 497, 501 (Minn. 1985) (observing that 40 stab wounds were probative of premeditation). Moreover, Luby stabbed K.A. in vital areas of her body, including her throat and abdomen. *See State v. Chomnarith*, 654 N.W.2d 660, 665 (Minn. 2003) (concluding that evidence that the defendant inflicted wounds to vital areas of the victim's body supported a finding of premeditation). In light of this powerful evidence of premeditation, Luby has not established that, but for defense counsel's single passing comment about premedita-

tion during closing argument, the outcome of the trial would have been different.

In sum, because defense counsel's isolated comment about premeditation during his 28-page closing argument did not concede every element of the charged offenses, leaving nothing left in dispute, and because Luby has failed to establish a reasonable probability that, but for defense counsel's single statement about premeditation, the result of the proceeding would have been different, I would affirm Luby's convictions for first- and second-degree murder.

GILDEA, Chief Justice (dissenting).

I join in the dissent of Justice Chutich.