*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1734**

State of Minnesota,
Respondent,

vs.

Rolmando Walker,
Appellant.

**Filed December 11, 2023**
**Affirmed**
**Ede, Judge**

Scott County District Court
File No. 70-CR-22-3594

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Greg Scanlan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Bjorkman, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**EDE**, Judge

In this direct appeal, appellant challenges a final judgment of conviction for attempted first-degree aggravated robbery and second-degree assault—dangerous weapon. Appellant asserts that the state provided insufficient evidence to prove that the knife

involved in the crimes was a "dangerous weapon," i.e., "a device designed as a weapon and capable of producing death or great bodily harm." In the alternative, appellant seeks a new trial based on his claim that he received ineffective assistance of counsel when his defense attorney conceded guilt, without his consent. Because we conclude that there was sufficient evidence to prove that the knife was a dangerous weapon and that defense counsel did not concede guilt, we affirm.

## FACTS

### *Underlying charges*

In March 2022, respondent State of Minnesota charged appellant Rolmando Walker with attempted first-degree aggravated robbery, in violation of Minnesota Statutes sections 609.245, subdivision 1, and 609.17, subdivision 1 (2020), and second-degree assault—dangerous weapon, in violation of Minnesota Statutes section 609.222, subdivision 1 (2020). The charges concerned Walker's involvement in an incident at the Mystic Lake Casino. Police responded to a report that Walker had approached F.R.V., who was sitting outside the main entrance of the casino, and that Walker had demanded F.R.V.'s shoes while brandishing a knife. After F.R.V. pushed Walker away and reported the incident to security, law enforcement reviewed surveillance video and found Walker inside the casino. Walker admitted to police that he took out a knife and opened it, but he claimed that he placed it back in his pocket and later put it in his brother's car. Officers reviewed additional surveillance footage and found a knife in a trash can outside the casino. Police arrested Walker, and the matter proceeded to trial.

*Trial proceedings*

At trial, the state offered into evidence a photo of the knife, and the knife itself, through a sergeant's testimony. The district court received both exhibits. The sergeant testified that he responded to the casino on the night of the incident and learned that someone had threatened F.R.V. with a knife. According to the sergeant, officers initially believed that the knife was in a car, but surveillance video showed otherwise. The sergeant learned from the surveillance footage that Walker had exited the casino and discarded something in a garbage can. The sergeant testified that he went to the same garbage can, lifted the lid, and located a folding knife. The sergeant produced that knife in court, took the knife out of the evidence box, and opened the knife for the jury to see. The sergeant then stated that the knife was about seven to ten inches long, which included the handle and the blade.

The state called F.R.V. as a witness. While describing the incident, F.R.V. testified that he suddenly saw a man coming toward him with a knife and the man "opened the blade." F.R.V. said that this scared him because the man had a knife and was asking for his shoes. F.R.V. also testified that the man came really close to him and pointed the knife at him. But he stated that the man did not try to forcefully remove his shoes.

After the state rested, Walker testified that, on the night of the incident, he exited the casino, saw a man sitting on the bench, and approached the man with a lighter in his hand. But Walker also acknowledged that he had provided a statement to officers that he had a knife and that he put the knife in his brother's car.

In closing, defense counsel argued:

3

Elements of the First Degree Aggravated Robbery are: defendant took property from a person. What was the one undisputed fact that we had? Didn't take any property . . . Second, that Defendant knew that he was not entitled to the property. Third, threat of imminent force to overcome that and obtain that property, right? Hold on. Fourth, that was armed with dangerous weapon—knife is a dangerous weapon. Second, the Defendant didn't act [on] those substantial steps toward and more [than] mere [preparation] and commission of the crime. I would state to you that both of those, one and two, failed beyond a reasonable doubt for what I stated before . . . Assault means an act done—or assault with [a] dangerous— weapon [means] that Mr. Walker assaulted [F.R.V.] Assault means as an act done with intent to cause [F.R.V.] fear of immediate bodily harm or death. You heard Mr. Walker state that he did not do any act with intent to put [F.R.V.] in fear. Mr. Walker knows his intent, Mr. Walker testified; [he is] not guilty.

The district court instructed the jury that a dangerous weapon was "any device designed as a weapon and capable of producing death or great bodily harm." The jury found Walker guilty of both counts.

Walker appeals.

## DECISION

Walker argues that this court should reverse his convictions for attempted first-degree aggravated robbery and second-degree assault—dangerous weapon because there was insufficient evidence to prove that the knife was a dangerous weapon. In the alternative, Walker asserts that he is entitled to a new trial because his counsel provided ineffective assistance of counsel. We disagree.

4

**I.      There was sufficient evidence to prove that the knife was a dangerous weapon.**

Walker contends that the trial record was insufficient to sustain his attempted first-degree aggravated robbery and second-degree assault—dangerous weapon convictions because the state neglected to offer evidence about the design of the knife.

Both charges required proof regarding Walker's possession or use of a "dangerous weapon." *See* Minn. Stat. §§ 609.245, subd. 1 ("Whoever, while committing a robbery, is armed with a dangerous weapon . . . is guilty of aggravated robbery in the first degree and may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $35,000, or both."),[1] .222, subd. 1 ("Whoever assaults another with a dangerous weapon may be sentenced to imprisonment for not more than seven years or to payment of a fine of not more than $14,000, or both."). "Dangerous weapon" is statutorily defined as:

> [A]ny firearm, whether loaded, or unloaded, or any device designed as a weapon and capable of producing death or great bodily harm, any combustible or flammable liquid or other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm, or any fire that is used to produce death or great bodily harm.

Minn. Stat. § 609.02, subd. 6 (2020).

In this case, the district court only instructed the jury that a dangerous weapon was "any device designed as a weapon and capable of producing death or great bodily harm." Without specific trial evidence regarding the knife's design, Walker maintains that the

---

[1] The state charged the first-degree aggravated robbery count as an attempt, pursuant to Minnesota Statutes section 609.17, subdivision 1.

5

record is insufficient to support his convictions. The state counters that, because the district court received the knife into evidence, the jury was able to make its own determination as to whether the knife was a dangerous weapon.[2]

Walker nevertheless asserts that "[o]bserving the knife itself, without more, would only have been enough for the jury to infer circumstantially that it was designed as a weapon[,]" which "still could not be sufficient because that certainly would not be the only reasonable inference." In support of this position, Walker cites *In re Welfare of P.W.F.*, 625 N.W.2d 152, 154-55 (Minn. App. 2001). In *P.W.F.*, the appellant realized that he had brought a three-inch-long folding-type knife with one sharply pointed blade with him in his pocket while he was riding the bus to school. 625 N.W.2d at 153. The appellant put the knife in his locker for the school day and then took it to a friend's house after school, where he left it. *Id.* "[T]here [was] no claim that appellant used or intended to use the knife to produce death or great bodily harm[.]" *Id.* at 154.

On appeal, this court addressed a sufficiency-of-the-evidence challenge to a juvenile delinquency order concluding that the appellant had possessed a dangerous weapon on school property. *Id.* at 153. We noted that the charged offense defined "dangerous weapon" by reference to Minnesota Statutes section 609.02, subdivision 6, and, given the specific facts of the case, "appellant's knife could be a dangerous weapon only if it was designed

---

[2] The state also contends that the evidence was sufficient because defense counsel conceded that the knife was a dangerous weapon. We are not persuaded by this argument. Counsel's closing was not evidence, and the district court instructed the jury accordingly. *See, e.g., State v. McCoy*, 682 N.W.2d 153, 158 (Minn. 2004) (recognizing that an attorney's statements and arguments at trial are not evidence).

as a weapon and was capable of producing death or great bodily harm." *Id.* at 154. Reasoning that "[t]he state *submitted no evidence* that appellant's knife was designed as a weapon[,]" that "it [was] not apparent that appellant's small folding knife was designed as a weapon rather than for its many other uses[,]" and that "the trial court could not take judicial notice of the fact that the knife was designed as a weapon[,]" we held that "[t]he state failed to meet its burden of proving that appellant's knife was designed as a weapon." 625 N.W.2d at 154-55 (emphasis added).

Walker's argument and reliance on *P.W.F.* are unavailing. Even assuming without deciding that the trial record in this case—which included the knife itself—does not contain sufficient *direct* evidence of the knife's design, we conclude that there was sufficient additional *circumstantial* evidence to prove that the knife was designed as a weapon.

In a criminal case, due process requires the prosecution to "prove every element of the offense beyond a reasonable doubt." *State v. Culver*, 941 N.W.2d 134, 142 (Minn. 2020). The state may prove an offense by direct or circumstantial evidence. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). Direct evidence is evidence that is "based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation omitted). Circumstantial evidence is "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *Id.* (quotation omitted). "When the direct evidence of guilt on a particular element is not alone sufficient to sustain the verdict," appellate courts "apply a heightened two-step standard, which we have called the circumstantial-evidence

standard of review." *Loving v. State*, 891 N.W.2d 638, 643 (Minn. 2017); *see also Silvernail*, 831 N.W.2d at 598.

First, we "identify the circumstances proved by the State." *Loving*, 891 N.W.2d at 643. In this step, we "defer . . . to the jury's acceptance of the State's evidence and its rejection of any evidence in the record that is inconsistent with the circumstances proved by the State." *Id.*; *see also State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014) (explaining that, "[i]n identifying the circumstances proved," appellate courts "assume that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict[,]" "construe conflicting evidence in the light most favorable to the verdict[,] and assume that the jury believed the State's witnesses and disbelieved the defense witnesses" (quotation omitted)).

Second, we must "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis other than guilt." *Loving*, 891 N.W.2d at 643 (quotation omitted). In this step, we "do not defer to the jury," but instead "independently examine the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt." *Id*. (quotation omitted). "If a reasonable inference other than guilt exists," the appellate court "will reverse the conviction." *Id*.

Applying the circumstantial-evidence standard to the present matter, we first identify the following circumstances proved as to whether the knife was a dangerous weapon: (1) Walker had a knife at the casino; (2) Walker approached F.R.V. outside the casino, took out the knife, and pointed it at F.R.V.; (3) the knife was a folding knife;

8

(4) the knife's handle and blade measured seven to ten inches, in the aggregate; (5) Walker threw something away in the garbage can outside the casino; and (6) the sergeant found a knife in the same garbage can.

Turning to the second step, we conclude that the circumstances proved are consistent with guilt as to the knife's design as a weapon, and that no reasonable inference other than guilt exists. We do not defer to the jury in reaching this conclusion, but rather rely upon our independent examination of the reasonableness of all inferences that might be drawn from the circumstances proved. While the state did not offer direct witness testimony regarding whether the knife was designed as a weapon, the trial evidence included the knife itself, allowing for a close review of its appearance and how it opened. This was not a small knife, nor was it a butter knife; it was seven to ten inches long, which is significantly longer than the three-inch-long folding knife in *P.W.F.* 625 N.W.2d at 153. In addition, there is record evidence of the circumstances surrounding Walker's possession and use of the knife, i.e., Walker's admission to possessing the knife at the casino, F.R.V.'s testimony that Walker pointed the knife at him, and Walker's disposal of the knife in the trash afterwards. It is reasonable to infer from these circumstances that the knife was designed as a weapon. This is entirely unlike *P.W.F.*, where the state submitted no evidence that the appellant's knife was designed as a weapon, the appellant accidentally carried the knife to school but then placed it in his locker, and there was no evidence that the appellant used or intended to use the knife to produce death or great bodily harm. *Id.* at 153-55.

9

Instead, the facts of this case are closer to *State v. McKay*, No. A09-554, 2010 WL 431480 (Minn. App. Feb. 9, 2010), *rev. denied* (Minn. Mar. 30, 2010).[3] In *McKay*, the defendant approached the entrance to a courthouse and activated the metal detector. *Id*. at *2. McKay told the deputies that he was wearing steel-toed shoes and was allowed inside the courthouse. *Id*. Some minutes later, McKay returned to the deputies and told them they should check people more thoroughly because he had a knife in his shoe. *Id*. At McKay's trial, the state "was unable to produce the knife as an exhibit because it had been returned to appellant several weeks" earlier. But the deputies testified that the knife was "a sharp, silver-colored folding knife, approximately three and one-half to four inches long, which appellant had concealed in the toe of his shoe." *Id*. at *1. Moreover, "[e]ach deputy also drew a picture of the knife from memory." *Id.*

On appeal, the appellant "argue[d] that the evidence was insufficient to prove that the knife was a 'dangerous weapon' as that term is defined by Minn. Stat. § 609.02, subd. 6 (2006)." *McKay*, 2010 WL 431480, at *1. Although "neither deputy was asked to opine whether the knife was designed to be used as a weapon," we nonetheless concluded that "the jury could make such a factual inference *based on the description of the knife and on the circumstances surrounding appellant's possession of the knife*[,]" and that "the issue of whether the knife met the definition of a dangerous weapon . . . was within the common knowledge and experience of the jury." *Id.* (emphasis added).

---

[3] This case is not binding. We cite it for its persuasive value. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

Moreover, this court expressly distinguished *P.W.F.*, which it characterized as "emphasiz[ing] that the district court made no findings concerning the purpose for which the knife was designed and that the court could not take judicial notice of that fact." *McKay*, 2010 WL 431480, at *1 n.1. In contrast to *P.W.F.*, we explained that the jury in *McKay* "was instructed on the definition of dangerous weapon and impliedly made that finding as part of its verdict." *Id.* Thus, reasoning that "the circumstances surrounding appellant's possession of the knife are relevant to appellant's guilt[,]" this court "conclude[d] that the evidence was sufficient to support appellant's conviction." *Id.* at *2.

Although not precedential, we find the reasoning in *McKay* to be persuasive, and we adopt it here, where the circumstances surrounding Walker's possession of a longer knife that the district court received as an exhibit were even more indicative of the knife's design as a weapon. In sum, after independently examining the reasonableness of the inferences that might be drawn from the circumstances proved, the foregoing evidence is consistent with the conclusion that the knife Walker possessed was a device designed as a weapon and capable of producing death or great bodily harm. And the circumstances proved, in their entirety, are inconsistent with any rational hypothesis except that Walker's knife was designed as a weapon. The state therefore provided sufficient evidence to prove that the knife was a dangerous weapon.

## II. Walker did not receive ineffective assistance of counsel because counsel did not concede guilt.

Walker argues that defense counsel's performance was deficient because counsel conceded guilt in his closing argument as to whether the knife was a dangerous weapon,

without Walker's consent. The state counters that Walker "conflates a defense attorney conceding guilt with a defense attorney conceding one or more elements of an offense." We agree with the state.

We analyze an ineffective assistance of counsel claim raised on direct appeal under the two-pronged *Strickland* test.[4] *See Peltier v. State*, 946 N.W.2d 369, 372 (Minn. 2020). To meet this test, an appellant must show that (1) the attorney's representation "fell below an objective standard of reasonableness," and (2) "there was a reasonable probability that, but for [the attorney's] errors, the result of the proceedings would have been different." *Peltier*, 946 N.W.2d at 372 (quotation omitted). Appellate courts "give trial counsel wide latitude to determine the best strategy for the client." *State v. Nicks*, 831 N.W.2d 493, 506 (Minn. 2013). But when defense counsel concedes guilt without the defendant's consent, counsel's performance is deficient and prejudice is presumed. *State v. Prtine*, 784 N.W.2d 303, 317-18 (Minn. 2010). We review de novo whether defense counsel conceded guilt and, if so, whether the defendant acquiesced in that concession. *State v. Luby*, 904 N.W.2d 453, 457 (Minn. 2017). "We may address the prongs in either order, and a claim may be disposed of on one prong without analyzing the other." *Eason v. State*, 950 N.W.2d 258, 268 (Minn. 2020).

The Minnesota Supreme Court has held that a concession on any single element is not necessarily a concession of guilt, even if it lacked the defendant's consent. *State v. Huisman*, 944 N.W.2d 464, 468 (Minn. 2020). In *Huisman*, "counsel's concessions of

---

[4] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

fewer than all the elements [were] not a concession of guilt" because the elements defense counsel conceded were undisputed at trial. *Id*. On appeal, the supreme court concluded that Huisman's counsel was not ineffective because the concessions about undisputed elements were reasonable, and counsel focused his attention on the disputed elements. *Id*.

The supreme court has also held, however, that a concession of a single element can constitute a concession of guilt. In *State v. Luby*, the defendant was indicted for first-degree murder and he provided trial testimony admitting that he had stabbed the victim to death. *Luby*, 904 N.W.2d at 455. The defense's strategy was to concede that the defendant killed the victim but argue that he could not have formed intent due to his intoxication. *Id*. During closing argument, defense counsel described the elements of first-degree murder and stated: "[F]irst degree murder requires premeditation and the intent to kill. . . . We're not really disputing the premeditation part. I would submit to you that [the] intent element is the one that's in question here." *Id*. at 456 (emphasis omitted). The supreme court noted that premeditation requires time to pass between the formation of intent and carrying out the act. *Id*. at 457-58. Because defense counsel expressly conceded the premeditation element and—because forming intent is a prerequisite to premeditation—the court concluded that counsel had also conceded intent, thereby conceding guilt. *Id*.

Furthermore, the supreme court has held that an attorney can impliedly concede guilt. In *State v. Wiplinger*, 343 N.W.2d 858, 859 (Minn. 1984), the defendant was charged with the sexual assault of a ten-year-old. Defense counsel's cross examinations of the victim and her grandmother presumed that the defendant had committed the alleged acts to elicit agreement that the defendant had not threatened the victim or used force. *Id*. at 859-

13

60. This line of questioning was contrary to the defendant's position that he did not touch the victim, and the defendant objected to his attorney's representation of him during the trial. *Id*. at 860-61. Observing that "defense counsel did not come right out and expressly admit that defendant was guilty[,]" the supreme court nevertheless concluded that counsel's "cross-examination of the victim and her grandmother at least impliedly did that." *Id.* at 861. The supreme court therefore held that, "if a defense counsel impliedly admits a defendant's guilt without the defendant's permission or acquiescence, the defendant should be given a new trial even if it can be said that the defendant would have been convicted in any event." *Id.*

In the present matter, the district court instructed the jury to decide whether "the defendant was armed with a dangerous weapon" and whether the defendant "used a dangerous weapon." And, as discussed above, the court instructed the jury that a dangerous weapon was "any device designed as a weapon and capable of producing death or great bodily harm." Walker's defense counsel did state in his closing argument that the knife was "a dangerous weapon." But significantly, defense counsel neither conceded that Walker was *armed with* a dangerous weapon nor that Walker *used* a dangerous weapon. Counsel therefore did not concede guilt as to the entirety of the relevant "dangerous weapon" element of each offense.

Based on our review of the record, we conclude that this partial concession was reasonable as a trial strategy analogous to the defense counsel's concessions of fewer than all the elements in *Huisman*, 944 N.W.2d at 468. Although the parties in this case did not stipulate that the knife was a dangerous weapon, the issue was not disputed during the trial

14

and—as discussed above—there was sufficient circumstantial evidence to support the jury's determination that the knife was a device designed as a weapon and capable of producing death or great bodily harm. As in *Huisman*, defense counsel's characterization of the knife as a "dangerous weapon" in closing was "not a concession of guilt" because that fact was undisputed during the trial, insofar as counsel did not challenge whether the knife was a "dangerous weapon" through cross-examination, evidence, or closing argument. *Id.* Instead of potentially damaging the credibility of his defense by arguing that the knife was not a dangerous weapon, counsel here—like the attorney in *Huisman*—reasonably focused his attention on the remaining disputed elements by arguing that Walker "did not do any act with intent to put [F.R.V.] in fear." Because it is not a concession per *Huisman*, the defense attorney's decision falls within the "wide latitude" we afford to trial counsel "to determine the best strategy for the client." *Nicks*, 831 N.W.2d at 506.

Moreover, this case is distinguishable from *Luby* and *Wiplinger*. In *Luby*, intent and premeditation were inextricably bound and conceding premeditation necessarily conceded intent. By contrast, defense counsel's concession that the knife was a dangerous weapon neither conceded that Walker was armed with the knife when he confronted F.R.V. nor that Walker used the knife to assault F.R.V. Rather, defense counsel expressly argued that Walker did not commit any act with intent to place F.R.V. in fear. The present matter is likewise distinguishable from *Wiplinger* because counsel's concession did not impliedly undermine Walker's testimony that he did not show F.R.V. a knife at all, but instead approached F.R.V. with a lighter in his hand.

Because we conclude that Walker's defense attorney did not concede guilt, counsel's performance was not deficient and we need not address the issue of whether Walker consented, nor must we decide whether there was prejudice.[5] *See Eason*, 950 N.W.2d at 268.

**Affirmed.**

---

[5] Even if we were to address *Strickland*'s prejudice prong, Walker's argument in that regard entirely relies on a presumption premised on the existence of an unconsented concession of guilt. *See Prtine*, 784 N.W.2d at 317-18. That presumption is inapposite here because we have concluded that Walker's defense counsel did not concede guilt. That being the case—and given our conclusion that there was sufficient circumstantial evidence to prove that the knife was a dangerous weapon—Walker has failed to show a reasonable probability that, but for his attorney's performance, the result of the trial would have been different. *See Peltier*, 946 N.W.2d at 372.