*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1191**

In the Matter of the Welfare of: A. A. S., Child.

**Filed May 20, 2024**
**Affirmed**
**Connolly, Judge**

Rice County District Court
File No. 66-JV-23-967

Cathryn Middlebrook, Chief Appellate Public Defender, Gina D. Schulz, Assistant Public Defender, St. Paul, Minnesota (for appellant A.A.S.)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Donald E. Lannoye, Sibley County Attorney, Casey Swansson, Assistant Sibley County Attorney, Gaylord, Minnesota (for respondent county)

Considered and decided by Connolly, Presiding Judge; Gaitas, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

Appellant challenges his delinquency adjudication for receiving stolen property, arguing that he is entitled to a new trial because his trial counsel was ineffective and the prosecutor committed prejudicial misconduct. We affirm.

**FACTS**

In April 2022, appellant A.A.S., now 18, and his father were photographed at the site of an implement store in Baldwin, WI, on the night that a Kubota lawn mower retailing

for $7,499.00 was stolen. In June 2022, appellant and A.S., then 21, a Sibley County resident who had previously purchased a dirt bike from appellant, exchanged messages arranging to trade appellant's Kubota lawn mower for another dirt bike and a four-wheeler belonging to A.S. Appellant and his father delivered the mower and took the dirt bike and the four-wheeler. They told A.S. that the paperwork for the mower was in a truck that was being repaired, but they would mail it to him. The next day, A.S. discovered that the serial number sticker on the mower had been removed and notified the Sibley County Sheriff's Office. In August 2022, appellant was charged with and found guilty of receiving stolen property.

Nine witnesses testified at appellant's court trial. First, A.S. testified that: (1) he had met appellant in May 2022, when he purchased a dirt bike from appellant for $2,500; (2) in June, A.S. and appellant agreed to trade appellant's lawn mower for A.S.'s dirt bike and his four-wheeler; (3) when A.S. asked appellant if he had the paperwork for the mower, appellant said it was in a truck, which was being repaired; (4) appellant and his father came to do the trade late that night and told A.S. that they would mail him the paperwork; (5) the next day, A.S. could not find the serial number on the mower; (6) he notified the police because he did not want to be found with stolen property; (7) he attempted to contact appellant, without success; and (8) he later recovered his four-wheeler, but not his dirt bike.

Second, Deputy J.L., formerly of the Sibley County Sheriff's Department, testified that: (1) in June 2022, he was asked to obtain serial numbers off a suspected stolen Kubota lawn mower in a garage at A.S.'s residence; (2) the serial numbers had been ground off the mower; (3) J.M., a Kubota lawn mower dealer, asked J.L. to provide serial numbers from

2

the mower's hydro-gear, so J.M. could track the mower; and (4) Deputy J.L. provided Deputy M.S., the lead investigator on the case, with a report of his activity.

Third, J.M. testified that: (1) he told the Sibley County Sheriff's Office to look for different serial numbers on parts inside the mower; (2) they did so, and gave him the serial number from the mower's hydro-gear, which was specific to that hydro-gear and that mower; and (3) J.M. then called the state sales representative, who found that the lawn mower with that number on its hydro-gear had been stolen from a dealership in Wisconsin; and (4) J.M. informed the Sibley County Sheriff's Office of this information.

Fourth, Deputy M.S. testified that: (1) J.M. told him their database indicated that the stolen lawn mower had a hydro-gear number that matched the number on the lawn mower A.S. had; (2) the lawn mower had been in Baldwin, WI; (3) law enforcement in St. Croix County told M.S. that the lawn mower number matched the lawn mower stolen from Baldwin, WI; (4) M.S. retrieved the mower and transferred it to Sibley County; and (5) M.S. knew that the four-wheeler A.S. had traded for the lawn mower had been located.

Fifth, the manager of an implement store in Baldwin, WI, testified that: (1) a customer came to pick up the lawn mower he had ordered; (2) when the mower could not be found, the manager and his son went through videotapes from the store's surveillance system; (3) they found a picture taken at 12:00 or 12:30 in the morning on April 17, 2022, of someone driving the lawn mower north out of the lot; (4) the manager contacted the St. Croix County Sheriff's Department about the stolen lawn mower; (5) the store recovered part of the cost of the stolen mower from its insurer; and (6) the manager was eventually informed that the mower had been located in Sibley County.

3

Sixth, C.D., an investigator for St. Croix County, testified that: (1) he was able to identify license numbers on the vehicles depicted in the surveillance system photos; (2) he saw a Wisconsin license plate on a black Lincoln Navigator that came onto the property; (3) he learned that the black Navigator was owned by B.F. of Baldwin;[1] (4) C.D. also observed pictures of a white Dodge Ram truck and a white enclosed trailer entering the property west of the implement store and leaving soon afterwards; (5) he observed two males walk on to the implement store property; (6) C.D. learned from Sibley County that appellant and his father had been in possession of the stolen mower and had traded it for a dirt bike and a four wheeler; (7) based on information appellant and his father had given the court, C.D. learned that they were staying at a campground in North Branch, Isanti County, MN, where he found them; (8) Isanti County informed C.D. that the trailer and a stolen four wheeler were at the campground; (9) C.D. spoke with appellant, who said he knew nothing about a lawn mower stolen from an implement store; (10) the trailer C.D. observed at the campground was consistent with the one he had observed on the surveillance footage; and (11) with the assistance of Investigator D.G., C.D. learned that appellant and his father had been staying at the Baldwin residence associated with the license plate on the trailer.

Seventh, Deputy D.G. of St. Croix County testified that: (1) C.D. asked him to go to a residence in Baldwin; (2) at the residence he saw the black Navigator; (3) he learned that the owner of the residence, B.F., was appellant's grandmother; (4) on July 4, 2022, he

---

[1] B.F. was later discovered to be appellant's paternal grandmother.

traveled to Randolph, MN, to meet the owner of a storage facility where the suspected white truck was parked; (5) the white truck was the one D.G. had seen in the surveillance photo of the truck that had been involved in the theft; (6) on the truck's windshield he observed a document from a dealership, Nebraska Auto Sales, in Sioux City, Iowa; (7) the name M.W. was on the document;[2] (8) the owner of the facility said appellant was delinquent on payments to the storage facility and was the owner of the truck; and (9) D.G. verified with the owner of the residence in Baldwin that she and appellant were going to Iowa to purchase another truck or trade the truck in.

Eighth, Sheriff W.S. of Isanti County testified that: (1) through an email from St. Croix County, he learned that a lawn mower had been stolen in April 2022; (2) the lawn mower had been tracked to Sibley County, where it was traded for a four-wheeler and a dirt bike; (3) St. Croix County had identified persons of interest as appellant's father, with a photograph, and his wife and appellant, with descriptions, and thought they might be at an Isanti campground; (4) a black Ford Focus with the license plate DVD 613, registered to an in-law of appellant's father, and a white trailer were also at the campground; (5) on June 30, 2022, W.S. went to the campground and located the vehicles; (6) the license plate of the black Ford matched the license plate on the suspect vehicle; (7) two males, one of whom he recognized as appellant's father from the photograph and the other of whom matched appellant's description, were at the campground; (8) W.S. took up a position in the campground where he could observe the vehicle; (9) the vehicle left, driven by a female,

---

[2] M.W. was subsequently identified as appellant's grandmother.

then returned; (10) the vehicle left again, with the two males whom W.S. had seen earlier; (11) other officers made contact with the males in the vehicle while W.S. went to the campground to secure the trailer; (12) the trailer was open and he could see the blue four-wheeler that matched the four-wheeler A.S. traded to appellant for the lawn mower; (13) appellant's father's wife came out and W.S. identified her; (14) she was cooperative and told him there had been a dirt bike with the four wheeler; (15) with her consent, W.S. photographed the trailer and the four wheeler; (16) she told W.S. that appellant's father and his son had traded a lawn mower for the four-wheeler and the dirt bike and that the dirt bike was gone within a few days; (17) in his squad car, W.S. found a bill of sale saying that $2,500 had been paid for a four wheeler and put it into evidence; and (18) the bill of sale had been released with the four wheeler to A.S., who went to Isanti County and recovered it.

Ninth, Investigator K.C. of Isanti County testified that: (1) K.C. and W.S. had been asked for assistance by St. Croix County in looking at a campground for a white trailer that supposedly contained a stolen four wheeler and a dirt bike; (2) K.C. went to the campground office to see who had registered for the campsite where the vehicles were located; (3) W.S. told K.C. the vehicle was leaving the campsite with two people inside it; (4) K.C. first met appellant after he and his father had pulled in at a private residence about half a mile away; (5) appellant said he was there to buy a dirt bike from someone named Adam; (6) the homeowner said he did not recognize appellant or his father, no one named Adam lived there, and he did not have a dirt bike for sale; (7) when the lawn mower came up in conversation, appellant said he was not aware that one had been stolen.

6

Appellant then testified that: (1) the white truck was titled to his grandmother, M.W.; (2) he had sold A.S. a 2012 Kawasaki for $2,500; (3) in 2022, he had been in Baldwin for Easter, which was on April 17; (4) he later paid A.S. $2,500 for a Raptor 660 four wheeler; (5) he knew nothing about a Kubota lawn mower; (5) he did not know that any of the vehicles involved were stolen; (7) the June 2022 exchange of messages with A.S. over the trade of the lawn mower was "a fake account made under [appellant's] name"; (8) appellant and A.S. communicated by Snapchat, which automatically deletes messages, when arranging appellant's purchase of the four wheeler; (9) on April 17, 2022, A.S. asked appellant to come to his assistance at the implement store because A.S. had gotten his truck and a trailer stuck in the driveway; (10) appellant went to the implement store and waited for A.S. until 12:30 or 1:00 in the morning, but A.S. never came, so appellant left; and (11) appellant was with his father in the implement store surveillance photo taken that night.

The prosecution's exhibits included: (1) the exchange of messages between appellant and A.S.; (2) six pictures of the lawn mower, including the hydro-gear serial number; (3) six pictures from the surveillance video at the implement store on April 17, 2022; (4) three pictures of the white truck located in Randolph, MN, at the storage facility; (5) the implement store's insurance documentation for the stolen lawn mower; (6) the bill of sale for the dirt bike that appellant had previously sold to A.S.; and (7) pictures of the trailer and the four-wheeler at the campground. Appellant called no witnesses and presented no exhibits to support his account of the various transactions.

Following a court trial, the case was transferred to Rice County, where appellant lives, for disposition. He was adjudicated guilty of receiving stolen property and placed on probation until he turns 18, in October 2024. He argues on appeal that he was deprived of the effective assistance of counsel, that the prosecutor committed misconduct, and that the cumulative effect of these errors entitles him to a new trial.

**DECISION**

**1.    Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are reviewed de novo. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003). Claims are reviewed to determine whether counsel's performance fell below an objective standard of reasonableness and whether there is a reasonable probability, sufficient to undermine confidence in the outcome of the case, that but for counsel's errors, the outcome would have been different. *Id.* (citing and quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Appellate courts consider the totality of the evidence when reviewing ineffective-assistance claims; however, if either the performance prong or the prejudice prong of the *Strickland* test is dispositive, the other prong need not be reviewed. *Rhodes*, 657 N.W.2d at 842.

Appellant alleges four instances of ineffective assistance. First, he argues that his counsel missed the deadline for filing an exhibit list. But he does not specify any evidence that would have been included in the exhibit list or address whether that evidence would have been admissible, so the effect of counsel's not filing an exhibit list and agreeing to use only exhibits introduced by the state is speculative.

8

Second, appellant claims that, by stating that appellant posted on TikTok pictures of himself looking like a gangster, his counsel was implying appellant's criminality. The pictures were not introduced into evidence. Appellant's counsel's mention of the pictures may have been an attempt to argue that the pictures were a façade assumed for social medial purposes and did not depict appellant accurately. "What evidence to present to the [factfinder], what witnesses to call, and whether to object are part of an attorney's trial strategy which lie within the proper discretion of trial counsel and will generally not be reviewed later for competence." *State v. Bobo*, 770 N.W.2d 129, 138 (Minn. 2009). Moreover, there was no testimony received in regard to the pictures, and the district court's findings of fact give no indication that the district court considered the pictures. Particularly when considered in light of the extensive evidence presented to the district court, counsel's brief mention of pictures that appellant himself had posted on social media would not have produced a different outcome.

Third, appellant claims that counsel was ineffective in not reviewing a bill of sale and not investigating appellant's alternative-perpetrator defense. But the only bill of sale involved was submitted as evidence by the prosecution, and appellant concedes that, in regard to the bill of sale, "it is clear that an error occurred, but it is not clear what the error was." Nor is it clear that the error produced a different outcome. As to appellant's alternative-perpetrator defense, counsel's decision not to present it was trial strategy and therefore not subject to review. *See id.*

Finally, appellant claims that his counsel implicitly conceded appellant's guilt when he asked appellant if he knew that the lawn mower was stolen and said in closing argument

9

that "it doesn't appear that [appellant] . . . knew or had reason to know that he was dealing with stolen property." Appellant argues that, because he had testified that he knew nothing about the stolen mower, the question and the statement undermined his credibility. This court "will find an implied concession only [when] a 'reasonable person' viewing the 'totality of the circumstances' would conclude that counsel conceded the defendant's guilt." *Torres v. State*, 688 N.W.2d 569, 573 (Minn. 2004).

Appellant's counsel was dealing with a defendant who had admitted that he was on the property from which the lawn mower was stolen late on the night it was stolen. Not mentioning the stolen mower when questioning appellant would have been much closer to an implicit admission of guilt. Counsel preceded his closing-argument reference to stolen property with the statements that the bill of sale reflected a properly registered four-wheeler and that appellant had "obtained" property. These circumstances defeat the view that counsel conceded appellant's guilt. And even if counsel had conceded appellant's guilt in dealing with property he did not know was stolen, appellant acquiesced in that strategy. "Acquiescence [to a concession of guilt] may be implied . . . when the concession was an understandable strategy and the defendant was present, understood a concession was being made, but failed to object." *State v. Luby*, 904 N.W.2d 453, 459 (Minn. 2017) (quotation omitted).

We are not persuaded that any of these examples shows that counsel's performance "fell below an objective standard of reasonableness." *See Rhodes*, 657 N.W.2d at 842. Moreover, the state's evidence that appellant knowingly received and traded a stolen lawn

mower was such that, even if counsel had committed the errors appellant alleges, there was

no probability that the outcome would have been different.

The district court relied extensively on the 20 exhibits and the testimony of nine

witnesses in its findings to conclude that "[t]he State has established beyond a reasonable

doubt [appellant] is guilty of Receiving Stolen Property on June 16, 2022."[3] There is no

reasonable probability that, but for counsel's alleged errors at the court trial, the district

court would have reached a different conclusion.

**2.     Prosecutorial Misconduct**

> Unusually serious prosecutorial misconduct is reviewed
> to determine whether the misconduct was harmless beyond a
> reasonable doubt.  Here, even assuming without deciding that
> the prosecutor in this case committed misconduct requiring us
> to apply this . . . stringent standard of review, we conclude that
> the alleged misconduct was harmless beyond a reasonable
> doubt.
>
> . . . .
>
> Prosecutorial misconduct is harmless beyond a
> reasonable doubt if the [district court's] verdict result was
> surely unattributable to the misconduct.

*State v. Whitson*, 876 N.W.2d 297, 304 (Minn. 2016) (quotations and citation omitted).

During the trial, appellant presented his own defense or theory of the case, which

was that A.S. had stolen the lawn mower after appellant left the implement store site.

Appellant testified that the messages between himself and A.S. arranging to trade the

---

[3] The district court did not rely on appellant's testimony, noting that "[t]he only portion of [his] testimony the Court finds credible is his admission to having been on the [implement store] property with his father on April 17, 2022."

11

lawnmower for a dirt bike and a four wheeler were "fake" and that the messages between them arranging for appellant to buy a four wheeler from A.S. were unavailable because they had used Snapchat, which deletes sent messages. At the conclusion of appellant's direct examination, the prosecutor asked him, over objection, to confirm that he had not produced any of the messages to and from A.S. that he had mentioned during his testimony, thus verifying his claim that these messages were unavailable. Appellant argues that this question was prosecutorial misconduct because it implied that appellant had the burden of proving his innocence.

Even assuming without deciding that prosecutorial misconduct occurred, "[t]he strength of the other evidence supporting the verdict is also a factor in the analysis" of prosecutorial misconduct. *Whitson*, 876 N.W.2d at 304. Here, the testimony of the nine witnesses and the 20 exhibits amply supported the verdict. There is little chance that one question from the prosecutor confirming what appellant had already said played any part, much less "a substantial part," in the verdict, and no real chance that the verdict was attributable to that question. *See State v. Pendleton*, 759 N.W.2d 900, 911 (Minn. 2009).

3.     **Cumulative Error**

Appellant argues that, even if neither the ineffectiveness of counsel nor the prosecutorial misconduct would independently entitle him to relief, their cumulative effect was to deprive him of a fair trial. When cumulative errors deny an appellant a fair trial, reversal and a new trial are the remedy. *State v. Fraga*, 898 N.W.2d 263, 278 (Minn. 2017).

A cumulative-error argument requires that there in fact be errors, and we are not persuaded that appellant has shown error in either his counsel's representation of him or

the prosecutor's conduct. But "[w]hen considering a claim of cumulative error, [this court] look[s] to the egregiousness of the errors and the strength of the State's case." *Id.* The errors appellant alleges were far from egregious, and the state's evidence made its case strong enough that the errors, even if they had been egregious, would not have affected the result.

**Affirmed.**